Weldon, J.,
delivered the opinion of the court:
The petitioner alleges that on the 31st of December, 1886, he was passed assistant paymaster in the Navy, having been commissioned as such on the 2d day of November, 1875; that on the ñrst-mentioned date, in obedience to an order issued from the Navy Department, he reported on board the U. S. S. Ajax, a vessel belonging to the United States, employed by authority of law, and being at sea in the navigable waters of the United States, off City Point, in the State of Virginia that he continued on said duty until the 3d of October, 1887, when he was detached from said vessel; that during said time he received the pay of a passed assistant paymaster in the first five years after date of appointment on shore duty, to wit, the sum of $1,800, without any rations,- but he alleges that he should have received the sum of $2,000, together with a ration commutation of 30 cents per day for said time, which amounts to the sum of $333; and for that amount he brings this suit. The contention in this case involves the question whether, while the plaintiff was in the discharge of the duty to which he was assigned, he was performing sea duty, or at séa, within the meaning of the law, or shore duty, and if in the performance of either of the first two he is entitled to recover upon the theory of his petition.
The original order assigning him to duty designated the service which he was expected to perform as “shore duty,” although it was specified as “ duty on board the Ajax and other monitors off that place.” The question whether the ship was at sea within the technical meaning of the law may be eliminated from the discussion, as it has been repeatedly held that a ship situated as the Ajax was in legal contemplation at sea, being in a navigable water of the sea. City Point is on the James Biver, between Bichmond, Va., and Hampton Boads; anda *110 ship off that point is within the meaning of many decisions “ at sea;” but does the condition of the ship, with reference to whether it is at sea, or not, necessarily determine the question as to what the pay of an officer is who performs a duty imposed upon him by an order in relation to that ship 1 While being at sea is necessary to the performance of sea duty, does the performance of (my duty in a ship at sea impress upon the duty the character of sea service or being at sea? It must be borne in mind that the purpose and policy of the law is to pay officers for the discharge of a certain kind or class of duty, not necessarily dependent on the exact point where the services are performed; but looking at the kind and quality of the services. This suit is dependent on section 1556 of the Revised Statutes, which reads as follows :
“ During the first five years after date of appointment, when at sea, $2,000; on shore duty, $1,800; on leave waiting orders, $1,500. After five years from such date, when at sea, $2,200; on shore duty, $2,000; on leave or waiting orders, $1,200.”
The order directing the plaintiff to duty provides—
“ This employment on shore duty is required by the public interest, and such service will continue until the 30th of November, 1888, unless otherwise ordered.”
All that is known of the exact service performed by the petitioner is from the order directing him to report, and the fact that he continued to do what he did from December 31, 1886, to October 2, 1887, a period of nine months. There is no evidence showing in detail what his exact relation was to said ship; whether he remained on board all the tithe, subject to the restrictions and conditions incident to a person at sea within the requirements of naval duty.
The order contemplated by its phraseology that the duty which he was to perform was shore duty; and the only fact in the record tending to contradict that designation is the fact that the ship on board of which he was to perform the duty was “ at sea ” within the meaning of the law. The findings show that “ the vessel to which claimant was assigned was lying in port, held in reserve for sea service and reduced in complement.” The ships on which the petitioner performed the assigned duty belonged to the Navy of the United States, and were subject to the orders of that Department by law; but they were in a state of absolute repose, performing no function or *111 duty; held in reserve for “ sea service.” Ifc is insisted by the counselfor the claimant that the cases of Symonds v. The United States, Bishop v. The United States, and Strong v. The United States (21 C. Cls. R., 148; 215 U. S. R., 46-51; 23 C. Cls., 10; 125 U. S. R., 656) are in principle decisive of this case in favor of the plaintiff. There is, as we conceive, a marked difference between those cases and the one presented by the record in this proceeding. In those cases it was shown that the claimants were not only in the performance of a duty incident to a ship at sea, but it further appeared that they were subjected to substantially the same condition of duty as if they , were on the “ high seas.”'
The real controversy in the Symonds case was as to the effect of the order of the Secretary of the Navy changing the condition of the ship as to being in commission. It was insisted by the defendants that such an order changed the character of the service, and thereby affected the amount of compensation due the officer. But this court said that—
“The legal essence of things can not be changed by a mere name, by the volition of an executive officer in the discharge of an executive duty.”
And so in this case, the designation of the Secretary .of the Navy that this employment on shore duty ” does not of itself determine the legal, character of the service or duty performed. In the construction of the statutes the court must look into the substantial essence of the transaction, and determine the will of the legislature upon that basis, and not on a mere technicality.
In the Strong case, which followed the line of judicial determination announced in the Symonds case, it was found by the court—
“ On the 4th day of February, 1886, claimant was ordered to report on board the United States receiving ship Wabash for duty, and did so report, on February 20, 1886, and continued from that time to the 4th of May to discharge duties on board said ship; that he performed the duties of executive officer of said vessel, which duties are similar to those of executive officers on cruising ships; and in addition to these general duties he had others which were more exacting and arduous than those on board a cruising ship.
“ During the time he was attached to said vessel claimant was required to have his quarters on board, and was'obliged *112 to wear his uniform, mess there, and was not permitted by the rules of the service to live with his family.”
It will be seen from this repetition of the facts in the Strong case, which are almost identical with those in the Symonds case, that they differ from what is found in this case, and upon that difference the cases decided by this court and affirmed by the Supreme Court may be differentiated.
In the opinion of the Supreme Court in the Strong case it is-recited that—
“ During the time he was attached to the vessel the claim- ■ ant was required to have his quarters on board, was obliged to wear his uniform, and was not permitted by the rules of the service to live with his family.”
The order of the Secretary of the Navy classifying the service in the cases decided by this court, in which the judgment of the court was in favor of the claimant, was overcome by the peculiar facts in each case, showing the character of the service to be the reverse of the designation as specified in the order of the Department.
Section 1556, which, as we have said, is the basis of the alleged right of the claimant, says:
“During the first five years after date of appointment, when-at sea, $2,000 ; on shore duty, $1,800; on leave or awaiting orders, $1,500.”
It is said in the Symonds Case (21 C. Cls. R., 154) the words-at sea, and performed at sea, as used in the statutes, do not mean on the “high seas,” beyond the sight of land, but upon the waters of the sea, subjected to such restrictions, regulations, and requirements as are incident to service at sea.
It will be seen by the words of this quotation that it is not the mere location or condition of the ship that determines the right of pay, but the condition of the ship with reference to the sea, qualified with the further condition of being “ subjected to such restrictions, regulations, and requirements as are incident to service at sea.” The terms “ when at sea” and “on shore duty,” as found in section 1556, were intended to-classify duty with reference to service, not mere condition or location; and although “ at sea” may pertain to the petitioner,, so far as the ship is concerned, if he is lacking in the further qualification of being “ subjected to such restrictions, regula *113 tions, and requirements as are incident to service at sea,” be is deficient in one element required in a complete cause of action.
The Supreme Court, in affirming the decision of this court in the Symonds Case, say:
“ We concur in the conclusion reached by the Court of Claims that the sea pay given in section 1556 may be earned by services performed under orders of the Navy Department in a vessel employed with authority of law in active service in bays, inlets, roadsteads, or other arms of the sea under the general restrictions, regulations, and requirements that are incident or peculiar to service on the high sea.”
The term “ active service,” as used in the Supreme Court, was noticed by this court in the subsequent case of Strong v. The United States (23 C. Cls. R., 11):
“ The defense seeks to distinguish the services in this case from the service in the Symonds case, and. much stress is laid on the term “active” as used by-the Supreme Court in the designation of the duty performed by Symonds. It is impossible to discriminate in law between the services in the two cases. The one may be more active than the other, but they are both active in the performance of a duty, differing, it may be, in degree, but not affecting the question of compensation.
“ The highest form of activity may be discharged in a naval engagement, and the lowest form may be on a receiving ship, but the court can not establish legal principles founded on degrees of activity. Such a distinction would introduce into the administration of the law an element subversive of general principles and tend to the confusion of a system which otherwise’would be plain and consistent.”
The burden of proof rests on the claimant to disclose by his evidence the character of the service rendered; this is especially true where the officer directing him to the designated service classifies the duty as “ shore .duty.” Unless he was subjected to the conditions and requirements indicated in the Symonds and Strong cases, he is not at sea in the meaning of section 1556.
The vessel in this case differed from the vessels in the Sy-monds and Strong cases in this, that the monitors on which the •claimant was to perform service were not in any service, either the highest or lowest. We do not recognize the case at bar as coming within the doctrine established by the Supreme Court in affirmance of this court; and nob being disposed to extend those cases to others not clearly within their principles of ad *114 judication, it is the judgment of the court that the petition be dismissed.
Nott, J., did not sit in this case and took no part in the decision.