Davis, J.,
delivered the opinion of the court:
On the first branch of this case the only question is whether the claimant should be paid from May 14 to October 27, 1875, as on sea-duty or as on shore-duty. The salary of a pay-inspect- or, the claimant’s rank when “on duty at sea,” is greater than when “ on shore duty.” (Rev. Stat., § 1556.) The statute provides that “no service shall be regarded as sea-service except such as shall be performed at sea.” (Ib., § 1571.) The Navy regulations in force at that time regarded officers as on sea-duty and entitled to sea-pay only when forming part of the complement of a vessel which was in commission for sea-service.
The claimant was on duty at the Pensacola navy-yard as pay-inspector from January 5 to July 31, and was in hospital, on a medical survey, from July 31 to October 27,1875, part of the *252 time in Pensacola, and part of the time in Washington. On the 14th of May, 1875, Paymaster Jordan, who had been attached to four iron-clads (which were then at anchor at that navy-yard in commission for sea-service), was detached from them, and the claimant, under orders, took charge of their accounts. Up to the 31st of July he kept the accounts of the vessels as well as the accounts of the yard, and made the payments and allowed the rations for the former from his office at the navy-yard. If these facts constituted him an officer “on duty at sea,” he is entitled to all he claims on this branch of his case, whether at the yard or in the hospital, or for the extra ration. We think that he was not “on duty at sea” during that time. After he took charge of the accounts of the vessels, he remained subj ect to the discipline of the yard, not of the ships. He was not part of the complement of the service of the latter, but of the former. If he had applied to the commander of the vessels for leave to reside on shore, that officer would undoubtedly have said, “Ihave no right to grant or refuse such permission. You are not part of my command.”
In the second branch of his case the claimant demands payment of $40, the price of a refrigerator, which was bought by him by order of the commandant of the yard, for the use of one of the forts, but without advertisement, and without a certificate of exigency. The claimant accidentally omitted it in his next account. On his subsequently presenting it, the accounting officer refused to allow it. The question raised by the government is disposed of by Speed's Case (8 Wall., 83), where it is held that when a discretion to dispense with advertising is conferred upon an officer, and a contract is made in which the discretion is exercised, the validity of the contract does not depend upon the degree of wisdom which may have accompanied its exercise; and by Clarke's Case (95 U. S., 539), in which the Supreme Court decided that when a contract, made in violation of mandatory provisions of law, has been executed, the party performing will be entitled to recover the fair value of the property or services.
A claim for “other duty” pay, which formed a third branch of the case in the claimant’s brief, appears to be abandoned by the stipulation of the parties, which is embodied in finding X, and which was filed after submission of the case.
Judgment will be entered for the claimant for $40.