Drake, Ch. J.,
delivered the opinion of the court:
Under the authority of section 4671 of the Revised Statutes, the claimant, a commander in the United States Navy, was, on the 27th of November, 1874, ordered by the Secretary of the Navy to report to the Secretary of the Treasury for duty as light-house inspector of the eighth light-house district. Having so reported, he received from the Light-House Board the •following order, dated December 8, 1874:
“ Sir : Your letter of the 28th November to the Secretary of the Treasury reporting for duty under the Light-House Board has been referred to this office. I have to direct that you proceed to New Orleans, and on the 1st of January next relieve Commander Robt. Boyd, jr., as inspector of the eighth light-house district, receipting to him for public funds, books, papers, supplies, &e., which he may deliver to you. After having made yourself familiar with the office duties, you will proceed to inspect the light stations in the district, reporting to this office the results of your inspection on the blank form provided for the purpose.”
This order the claimant obeyed, and he was on duty as lighthouse inspector from January 1, 1875, till November 15,1878, and had his office in New Orleans.
His district extended from Mobile, Ala., to the Rio Grande River in Texas, and embraced about 50 light-houses, lighted beacons, and light-ships, and about 170 buoys and other day-marks.
The performance of his official duties required him to go from point to point in the Gulf of Mexico, Mobile Bay, Mississippi Sound, Lake Pontchartrain, Galveston Bay,- Pensacola Bay, Matagorda Bay, and the Mississippi River; his means of transportation by water being two unarmed steam tenders, the Laurel and the Pansy, provided by the government exclusively for light-house service; each having a master who was in command of her, except when the claimant was on board on lighthouse duty, when he was in command. When thus on board -of either of those tenders, he was engaged in the work of inspecting and supplying light-houses, lighted beacons, aud lightships, and in placing, replacing, inspecting, and repairing buoys and other day-marks moored in the waters.
Between July 11,1877, and July 23,1878, he was aboard one *172 or the other of those tenders an aggregate time of 108 days,, performing those duties.
During that period the pay allowed by law to a commander in the Navy was, “ when at sea, $3,500 ; on shore duty, $3,000; on leave or waiting orders, $2,500.”
For all the time of his service he received shore-duty pay at the rate of $3,000 per annum; but he claims that for the 108 days that he was afloat he is lawfully entitled to sea pay at the rate of $3,500 per annum, which would give him $L75.35 more than he has been paid; and for that sum he asks judgment.
When he was ordered to report to the Treasury Department for light-house duty, and did so, he came within the purview of section 4671 of the Eevised Statutes, which provides that—
“An officer of the Army or Navy shall be assigned to each district as a light-house inspector, subject to the orders of the Light-House Board; and shall receive for such service the same pay and emoluments that he would be entitled to by law for the performance of duty in the regular line of his profession, and no other.”
Under this provision the range of inquiry as to the right of the claimant is very circumscribed. Sea pay is the pay allowed for sea service as contradistinguished from shore duty; and the question is what, in the eye of the law, constitutes sea service in such a case as this? Section 1571 of the Eevised Statutes settles that in these words:
“No service shall be regarded as sea service except such as shall be performed at sea, under the orders of a department, and in vessels employed by authority of law.”
It is upon this section that the claimant’s counsel rested his claim. They insisted that the 108 days of service afloat was “ performed at sea and in vessels employed by authority of law,” and that that was enough to entitle him to recover.
It might well be disputed whether he was “at sea” ht all, in the proper acceptation of that phrase; but we will not discuss that question. Concede that when he was steaming up and down the Mississippi Eiver, or on Lake Pontchartrain, or in Mississippi Sound, or in any one of the four bays above named, as well as when he was on the Gulf of Mexico, he was to be considered as “at sea,” and that, too, on a “vessel employed by authority of law ”; yet his right to sea pay is not made out; the foundation for it is not laid, and withoufthat there can be no superstructure.
*173 He does not show that the Light-House Board ever ordered Mm to perform sea service for a single day or even hour. The only orders ever given him by that board, so far as appears, were, 1. To,proceed to New Orleans and relieve Commander Boyd as inspector, and after making himself “familiar with the office duties” to “proceed to inspect the light-stations in the district”; and, 2. The order detaching him from duty as inspector. We think it quite clear that the former was an order to “ shore duty.” He was to take charge of an office in the city of New Orleans; that was to be his post of duty; and he was not to leave it for any duty afloat till he had made himself “familiar with the office duties”; and then he was to make a tour of inspection.
A large part of that tour had to be made by water. It was a necessary incident of the routine of his work as inspector, and the Light-House Board furnished the tenders to enable him to make it. When he went aboard of one of them, he was necessarily in command of her movements as a vehicle of transportation of men, implements, and supplies connected with the light-house service; but there is not the least evidence that he rendered sea service in the proper acceptation of the term; for he was never ordered to render any; and unless the service afloat was performed “ under the orders of a department,” it was not sea service in the view of the statute.
From these views it follows, of course, that the claimant has no cause of action, and hence that his petition must be dismissed.