Scofield, J.,
delivered the opinion of the court:
The question in this case is whether the services of the claimant, while in command of the Speedwell, should be classed and paid as sea or shore service.
The Speedwell was a United States sea-going’ steamer, of 306 tons burden, and with a crew of twenty-three men. When the claimant took command, August 1, 1882, she was lyiug in the river at the Washington navy-yard. During his term of service, which was between twenty-two and tweuty-three months, she made various trips to Norfolk, Annapolis, New York, Newport, Boston, and Portsmouth, N. II. When not on these voyages she was employed on the river and about Norfolk and Washington ; sometimes carrying freight and ordnance op or down the river, and sometimes towing monitors or other vessels. She received her orders directly from the Navy Department, and was always in readiness to proceed to sea. The rules and discipline for a man-of-war were always enforced, and the officers and crew dressed in Navy uniform, and always messed and slept on board.
The law of the case is found in the Revised Statutes, section 1556, which provides that lieutenants, after five years from the date of commission, shall be paid “ when at sea $3,600; on shore duty, $2,200,” and section 1571, which provides that “no service shall be regarded as sea service except such as shall be performed at sea under orders of a Department and in vessels employed by authority ofilaw.”
*26 It is very clear that the Speedwell was in sea service when outside the capes,, and about equally clear that the trips down the river, under orders for a sea-voy age, and up the river on her return from sea, partake of the same character. The service rendered at Norfolk, under the rule laid down by the Supreme Court in United States v. Symonds (120 U. S. R., 50), should also be considered sea service. In that case the court says :
“ We concur in the conclusion reached by the Court of Claims, namely, that the sea pay given in section 1556 may be earned by services performed, under the orders of the Navy Department, in a ATessel employed with authority of law, in active service in bays, inlets, roadsteads, or other arms of the sea, under the general restrictions, regulations, and requirements that are incident or peculiar to service on the high seas.”
It remains to consider whether service about Washington and trips up and down the river, when not proceeding to or returning from sea voyages, should also be considered sea service. Upon that question the Attorney-General, in 10 Opinions, 192, said:
“‘Duty at sea,’ then, is service ‘performed at sea.7 But when does this service begin? I do not think it a fair construction to say that it begins only when the vessel leaves her port and goes to sea. If the words are to receive a literal construction, it can not be said that a vessel is ‘at sea7 when lying in a port on her cruise, or even when proceeding up or down the Delaware or Potomac River. Captain Foote’s gunboats, on the Tennessee and Cumberland Rivers, are not literally ‘ at sea,7 and yet it would hardly be a safe construction to say that the service which he and his officers have recently performed with them on those rivers is not ‘duty at sea7 within the meaning of this act. A mere literal construction must, therefore, be discarded, and we are to adopt the one most in accordance with reason and justice.77
That the Navy Department regarded such service as performed at sea may be inferred from the Navy Regulations of 1876, which provide:
“ That officers of the Navy attached to vessels employed under the orders of the Department in active service on rivers or. lakes are entitled to sea pay as well as to rations. (Chap. NY, sec. 1, art. 24.)”
. Such employment on rivers must be classed either as service “performed at sea” or “on shore duty.” Either classification involves some latitude of construction. Considering that the *27 Speedwell was always afloat on tide-water, was frequently ordered to sea, and was at all times held in readiness to receive and obey such orders, that the officers and crew messed and slept on board and maintained the discipline of a man-of-war, it requires less deviation from the normal meaning of the words of the statute to decide that the service of the claimant was performed at sea than to hold that it was performed on shore. It had all the requisites of sea service except distance from land, and little or no resemblance to service on shore.
We, therefore, hold that this claimant was entitled to receive the compensation allowed by law for sea service during' all the time he commanded the Speedwell.
Judgment was entered for $880.37.