Peelle, J.,
delivered the opinion of the court.
The claim in this case was referred here by the Secretary of the Treasury, September 30,1892, by the following self-explanatory communication:
“By virtue of the authority conferred by section 2 of the act of Congress approved March 3, 1883 (22 Stats., 485), I have the honor to refer to your honorable court the claim of Samuel 0. Lemly, captain and judge-advocate-general of the Navy, for the sea-pay of a captain in the Navy while holding *473 bis present position of judge-advocate general of tbe Navy, under tbe provisions of tbe act of June 8, 1880 (21 Stat., 164). The claim is referred at tbe request of the Second Comptroller of tbe Treasury, who certifies that it involves controverted questions of law, and that tbe decision in this case will furnish a precedent for tbe future action' of tbe accounting officers of tbe Treasury.”
Tbe question presented by tbe reference, therefore,, for tbe consideration of tbe court is one of law, namely, is tbe plaintiff entitled to tbe sea pay and allowances of a captain in tbe Navy while performing, in tbe Navy Department, the duties of judge-advocate-general?
Tbe plaintiff’s appointment as judge-advocate general was made “ from tbe officers of tbe Navy,” under tbe act of June 8,1880 (21 Stat. L., 164; 1 Supp. to Eev. Stat., 2d ed., 290), which reads as follows:
“ That tbe President of tbe United States be, and be is hereby, authorized to appoint, for tbe term of four years, by and with tbe advice and consent of tbe Senate, from tbe officers of tbe Navy, or tbe Marine Corps, a judge-advocate-general of tbe Navy, with tbe rank, pay, and allowances of a captain in tbe Navy or a colonel in the Marine Corps, as the case may be.
“And tbe office of tbe said judge-advocate-general shall be in tbe Navy Department, where be shall, under tbe directions of tbe Secretary, receive, revise, and have recorded tbe pro-, ceedings of all courts-martial, courts of inquiry, and boards for tbe examination of officers for retirement and promotion in tbe naval service, and perform such other duties as have heretofore been performed by tbe sobcitor and naval judge-advocate-general.
The plaintiff contends that under this act be is entitled to tbe sea pay and allowances of a captain in tbe Navy, first, because of tbe words in tbe act “with tbe rank, pay, and allowances of a captain in tbe Navy or a colonel in tbe Marine Corps as tbe case may be,” and second, because of tbe duties imposed upon him by tbe act, additional to those theretofore performed by tbe solicitor and naval judge-advocate-gen'eral; while tbe defendants contend, that inasmuch as tbe act does not by express, terms fix bis pay and allowances as sea pay for shore duty, therefore be is only entitled to tbe pay of a captain in tbe Navy on shore duty; thát is, to $3,500 per annum, as provided by tbe laws .in force at tbe time of bis appointment to which reference is made in tbe act.
Tbe act referred to has never received judicial construction, *474 and tbe only question now presented is, as to wbat compensation the judge-advocate-general is entitled to receive by virtue of the words “ with the rank, pay, and allowances of a captain in the Navy or a colonel in the Marine Corps as the case may be.” So to ascertain what is meant by the language quoted it becomes necessary to examine the laws in force at the time of the plaintiff’s appointment and the judicial construction given thereto.
At the time of the plaintiff’s appointment there were three kinds of pay fixed for a captain in the Navy, dependent upon the character of the services performed, viz: “ Captains, when at sea, $4,500; on shore duty, $3,500; on leave, or waiting-orders, $2,800.” (See. 1556, 34. S.)
There was also in force section 1578, Revised Statutes, which reads as follows: “All officers shall be entitled to one ration, or to commutation therefor, while at sea or attached to a seagoing vessel; ” while section 1585, Revised Statutes, fixes the commutation price of the naval ration at 30 cents.
But section 1579, Revised Statutes, provides, “No person not actually attached to and doing duty on board a seagoing vessel, except the petty officers, seamen, and ordinary seamen attached to receiving ships or to the ordinary of a navy-yard, and midshipmen, shall be allowed a ration.” While section 1571, Revised Statutes, provides, “ No service shall beregarded as sea service except such as shall be performed at sea, under the orders of a department and in vessels employed by authority of law.” And section 1558, Revised Statutes, provides in substance that the compensation for the several lines of duty set forth above shallbe the “full and entire compensation.” In this connection, however, the defendants contend.that by the act of June 30,1876 (chap. 159, 19 Stat. L., 65), the plaintiff is entitled to an allowance for mileage when traveling on public business, and that that is what was intended to be covered by the word “allowances” intlieactof June 8, 1880, supra,under which he was appointed. The 8 cents per mile provided by this act was intended to be in lieu of actual expenses when traveling on public business, and is in the nature of indemnity for actual expenses incurred and not an allowance for services rendered. Perrimond’s Case (19 C. Cls. R., 509-511), in Sherburne’s Case (16, 491), and Smith’s Case (26 id., 568-572).
The statutes referred to would seem to be sufficiently explicit, *475 without reference to tbe construction which has been given thereto by the Supreme Court and by this court, but we will refer to the adjudicated cases in this court as to what constitutes sea service, some of which have been affirmed by the Supreme Court and none reversed.
In the Symonds Case (21 C. Cls. R., 148-154) the words “ at sea” were construed. In that case the plaintiff was, June 30, 1881, by order of the Secretary of the Navy, ordered to report for duty on board the United States training ship New Hampshire for service at Narragansett Bay, which service was to be considered as “ attached to a irnssel commissioned for sea service the same as other apprentice training vessels.” He did so report and performed duties similar to those of executive officers on cruising ships. Without changing the character of the service the Secretary of the Navy a year or so later issued an order that said vessel and others “will not be considered in commission for sea service,” but the court sustained the plaintiff’s contention in that case for sea pay, notwithstanding the latter order of the Secretary of the Navy, because the words “at sea,” as used in sections 1556 and 1571, Revised Statutes, “ do not mean on the ‘ high seas’ beyond the sight of land, but upon the waters of the sea, subject to such restrictions, regulations, and requirements as are incident to service at sea f and that case was affirmed by the Supreme Court, in which they say:
“We concur in the conclusion reached by the Court of Claims, namely', that the sea pay given in section 1556 may be earned by services performed under the orders of the Navy Department in a vessel employed, with authority of law, in active service in bays, inlets, roadsteads, or other arms of the sea under the general restrictions, regulations, and requirements that are incident or peculiar to service on the high sea. * * * (United States v. Symonds, 120 U. S. R., pp. 46, 50.)”
Subsequently the Supreme Court, in the case of United States v. Strong (125 U. S. R., 656), affirming the decision of this court (23 C. Cls. R., 10), held that service, by order of the Secretary of the Navy, by an officer in the Navy as executive officer on a receiving ship at anchor in port at a navy-yard, but not in commission for sea service, entitles him to receive pay for sea service. See also McRitchie’s Case (23 C. Cls. R., 23) and Corwine's Case (24 id., 104-113), where a paymaster in the Navy was ordered to City Point “for duty on board the Ajax and *476 the other monitors off that place,” the order designating such employment as shore duty for the public interests. The vessels were not in any designated service, but were lying in port and held in reserve for sea service and reduced in complement. So the court held: “We do not recognize the case at bar as coming within the doctrine established by the Supreme Court, and not being disposed to extend those cases to others not clearly within their principles of adjudication, it is the judgment of the court that the petition be dismissed.”
In Frary’s Case (24 C. Cls. R., 114-115), where the question presented was whether or not a boatswain in the Navy attached to a receiving ship at anchor was entitled to a ration, the court held that he was not, and that a receiving ship at anchor was not a seagoing vessel within the meaning of sections 1578 and 1579, Revised Statutes.
In Carpenter's Case (15 C. Cls. R., 247, 251) it was held that a “naval paymaster on duty at a navy-yard is not entitled topay for sea duty, though required by the Secretary of the Navy, in addition to his regular duties, to take charge of the accounts of certain ironclads temporarily at anchor off the navy-yard and in commission for sea service.” In Shoonmaker’s Case (19 C. Cls. R., 170) it was held that “an officer of the Navy assigned to duty as a light-house inspector under section 4671, Revised Statutes, and ordered to inspect the light-house stations in his district, is not entitled to sea pay under section 1571, Revised Statutes, while making his tour of inspection, though it be by water and involve going to sea.”
In Bishop’s Case (21 C. Cls. R., 215), affirmed by the Supreme Court, 120 U. S., 51), the principle laid down in Symond’s case, supra, was adhered to. To the same effect also is Button’s Case (20 C. Cls. R., 425).
From the decisions cited it is clear that the plaintiff would not be entitled, under sections 1556 and 1571 Revised Statutes, to the sea pay and allowances of a captain in the Navy for services rendered by him in the Navy Department, as judge-advocate-general. The plaintiff is required by the act under which he was appointed to perforin his duties as a judge advocate-general “in the Navy Department,” and it is not.therefore contended by him that he is performing sea service; but his contention is that under said act he is entitled to recover because the act leaves it optional with the President to appoint *477 from tbe officers of the Navy or the Marine Corps a judge-advocate-general of the Navy “with the rank, pay, and allowances of a captain in the Navy or a colonel in the Marine Corps, as the case may be;” and that inasmuch as the pay with allowances of a colonel in the Marine Corps is the greater compensation, therefore Congress intended that in case the President elected to appoint a judge-advocate-general “from the officers of the Navy” his pay and allowances should be that of sea pay or the equivalent of the pay with allowances of a colonel in the Marine Corps, especially since the act imposed upon him, as judge-advocate-general, duties additional to those theretofore performed, in this, that he is required to receive,revise, and have recorded the proceedings of “all boards for the examination of officers for retirement and pro-, motion in the naval service, and perform such other duties as have heretofore been performed by the solicitor and naval judge-advocate-general.”
There seems to be some justice in this argument for additional compensation to that of captain on shore duty by reason of the duties imposed additional to those theretofore performed by other similar officers; but the plaintiff knew the duties required of him before he accepted the appointment and none have since been added, as there might be, if germane, without entitling him to additional compensation, as held by the Supreme Court in United States v. King (147 U. S. R., 676-679).
The plaintiff is not paid as a captain in the Navy for services performed as such, but he is paid for services rendered asjudge-advocate-general “in the Navy Department,” and his compensation is fixed by reference to the rank and pay of a captain in the Navy during his tenure of office as such judge-advocáte-general. The pay proper, excluding longevity pay, of a colonel in the Marine Corps, as well as that of a colonel in the Army, is the same as that of a captain in the Navy on shore duty, while, as between officers of the Army and Navy and the Marine Corps, the relative rank, both of a captain in the Navy and a colonel in the Marine Corps, is that of a colonel in the Army (sections 1261,1612 and 1466 and 1603 Revised Statutes), and this-is evidently what led Congress to use in the act the words, “with the rank, pay, and allowances of a captain in the Navy, or a colonel in the Marine Corps, as the case may be.” It is a -familiar rule that, in the construction of *478 a statute, force and effect must be given to every part and word of it if the same can be done, though in doing so courts are not permitted to legislate nor to put a construction upon tbe language which would be manifestly contrary to legislative intent.
To construe the statute so as to allow the plaintiff the sea pay and allowances of a captain in the Navy, while performing in the Navy Department the duties of judge-advocate-general, would manifestly be contrary to legislative intent, as by so doing we would be incorporating in the act under which he was appointed the words “ sea pay,” or the highest pay of his grade, although the language of the act as it stands, with reference to the laws in force at the time, is susceptible of clear and well-defined meaning. We are strengthened in our conclusions that Congress did not intend to give the sea pay and allowances of a captain in the Navy to the judge-advocate-general for services performed in the Navy Department by reference to section 1565, Revised Statutes, wherein Congress, by express terms, provides, “ The pay of chiefs of Bureaus in the Navy Department shall be the highest pay of the grade to which they belong, but not below that of commodore.” By the act of September 28, 1850 (chap. 80, 9th Stat. L. 515), it is provided: “The pay of the Superintendent of the Naval School at Annapolis shall be at the rate allowed to an officer of his rank when in the service at sea.” And again, by the joint resolution of March 3, 1863 (12 Stat. L., 825), it is provided: “That the pay of the officer of the Navy assigned to the command of the navy-yard at Mare Island, Cal., shall be the sea pay of his grade.” We know of no instance where an officer in the Navy is entitled to sea pay and allowances while performing shore duty, except where it is so provided by express statute. So that it must be heid that if Congress, with the precedents before them, which they established, had intended by the act to give the plaintiff sea pay or its equivalent for shore service, they would have so expressed it, and not having done so we must conclude that they did not so intend.
If the word “ allowances” were notin the act, we think there would be no question but that the construction placed upon the act by the accounting officers of the Treasury Department would be correct. It is insisted by the plaintiff that because *479 no allowances attach to a captain in the Navy on shore duty, but do attach when performing sea service, therefore the word “allowances” means sea pay — that is to say, the word “ allowances” so changes or modifies the language as to say, “with the rank, sea pay, and allowances,” etc. There would be more force in this contention if Congress had never established the precedent of giving sea pay to officers in the Navy for shore duty by express statute, as in the case of Bureau officers, the-Superintendent of the Naval School at Annapolis, and the commandant of the navy-yard at Mare Island, supra, and there were no statutes prohibiting sea pay to officers in the Navy on shore duty; but in the face of these statutes and the precedents established by Congress, contrary to plaintiff’s contention, we can not interpolate words in the act, nor enlarge its meaning by reason of the word “allowances,” when such word, as applied to a captain in the Navy on shore duty, has no legal bearing or effect. It therefore follows that the word “ allowances ” applies to a colonel in the Marine Corps and has no reference whatever to a captain in the Navy while performing shore duty. This construction gives force and meaning to the word “ allowances ” in the act, although the court recognizes the distinction which Congress has made in the pay of the two officers while rendering services as judge-advocate-general. But in view of the construction which has uniformly been given the statutes, defining when an officer in the Navy is entitled to receive sea pay, and the precedent established by Congress referred to, we can not say that the statute under which plaintiff was appointed is susceptible of two meanings or that its words are obscure, and especially since the word “allowances” has a well-defined meaning and is applicable to a colonel in the Marine Corps. The statute was not enacted for the purpose of fixing the pay and allowances of the officer who should be appointed judge-advocate-general, but was mainly to authorize the President to appoint an officer from the Navy or the Marine Corps as judge-advocate-general, and the pay was fixed for such judge-advocate-general simply by reference to the rank which such officer should hold in the event of such appointment, so that we do not think Congress intended by the act to either enlarge or diminish the compensation attaching to a captain in the Navy, while discharging the duties of judge-advocate-general as designated in the act “in *480 tbe Navy Department,” or tbe compensation of a colonel in tbe Marine Corps; but intended that whatever pay and allowances attach to such officer, under tbe law as it remained at tbe time of the plaintiff’s appointment, should be paid him, but that he should not receive allowances not provided by law for a captain in the Navy on shore duty.
For the reasons stated the court is of the opinion that the construction given by the accounting officers of the Treasury Department is correct, and this opinion together with the findings of fact and the conclusion of law thereon will be certified to the Treasury Department for its guidance and action.