Weldon, J.,
delivered the opinion of the court:
It is alleged in the petition of claimant that he is an officer of the United States Navy, to wit, a lieutenant, having been commissioned as such on the 21st of March, 1871; that on the 15th of March, 1882, he was ordered by the Secretary of the Navy to duty on board the United States training-ship New Hampshire; that in obedience to such order he reported as directed on April 1, 1882; that from that time to the filing of the petition he served on board said ship; that said ship was put in commission on sea service in August, 1881, and was ordered to proceed to Newport, R. I., for duty in the United States training fleet; that since the time said ship was put on sea service at Norfolk she has at various times, and is at the time of bringing the suit, under the direction of the Secretary of the Navy, the flag-ship of the squadron, and served as such from the 14th of February, 1883, with headquarters in Narragansett Bay; that up to July 31, 1882, and from the said 1st day of April, 1882, petitioner received the sea pay of a lieutenant, after five years’ service, to wit, at the rate of $2,600 per annum, and in addition 30 cents per day as ration money ; but that since that time he has been allowed at the rate of $2,200, as on shore duty. He brings this suit to recover the difference between the pay allowed for sea and shore duty under section 1556, Revised Statutes.
The material allegations of the petition are sustained by the findings, but in addition thereto it is shown that on the 7th day of July, 1882, the Secretary of the Navy issued General Order No. 297, as follows:
“ On and after the 1st of August next the New Hampshire, the Minnesota, the Intrepid, and the Alarm will not be considered as in commission for sea service.”
The claimant received pay for sea service until this order took effect, and thence to the bringing of this suit the Department recognized him as performing shore duty and service, and he has been paid accordingly. The Government contends that the legal effect of that order is to determine the character *151 of the service, and place him in such relation to the Department as that he can only claim by law the compensation of a lieutenant on shore duty.
The issue thus marked involves the construction of a portion of section 1556, which provides as follows :
“ Lieutenants after five years from such date when at sea, $2,600 ; on shore duty, $2,200; on leave or waiting orders.”
In connection with a construction of this statute is involved the question, whether the Secretary of the Navy has power, under section 1547, Revised Statutes to determine by orders the character of the service, and thereby fix the compensation of the officer. We will consider the power of the Secretary under section 1547, and the construction of the statute providing compensation for the performance of services at sea and on shore.
It is insisted by the Assistant Attorney-General that the Supreme Court has settled the question in favor of the right of the Secretary to determine by order the kind of service, and thus fix the emolument of the officer, without reference to the character of the service he performs. Two decisions are cited to sustain the position assumed in the contention of the Government : The case of Gratiot v. The United States (4 Howard, 80) and the more recent case of Ex parte Reed (100 U. S. R., 13).
In the Gratiot Case the Supreme Court says:
“ The Army regulations, made pursuant to the authority conferred by Congress, have the force of law.”
And in the Reed Case it is said :
“The regulations for the administration of law and justice in that service, established by the Secretary of the Navy, with the approval of the President, have the force of law.”
By an examination of the cases relied on by the Government it will be seen that the regulations referred to in both were in relation to a different subject-matter than the one embraced in the regulation in the case at bar. In the Reed Case it had reference to the “ administration of law and justice” — a mere mode of proceeding which had not been provided for by the statute, but was left to the discretion of the Secretary of the Navy, subject to the approval of the President.
The “orders, regulations, and instructions issued by the Secretary of the Navy,” under section 1547, Revised Statutes, *152 must be in pursuance of law upon a subject-matter which the law has not determined, adjusted, or defined. In the Gratiot Case the Supreme Court says:
“ The Army regulations under which General Gratiot was removed from West Point to Washington were authorized by law, and his brevet rank did not release him from discharging the duties of his commission proper.”
It may be assumed as a fundamental proposition that every regulation of an Executive Department of the Government must be in conformity to law, when a law exists upon the subject of the regulation. The legislative will, as expressed in the statute,-made in pursuance to the constitutional power of Congress, is the supreme law of the land, binding alike on the officer and citizen. Conceding that the order of the 7th of July, 1882, was intended to reduce the pay of the claimant from $2,600 to $2,200, the question arises : Had the Secretary of the Navy the power to change the character of the service as recognized by the construction of the order of the 15th of March, 1882, to the character of service as recognized by the order of the 7th of July?
The question presented by the statement is to be answered by a construction of the latter part of section 1556, already quoted. The dispute in this case does not refer to a matter affecting the' mere regulation of the Navy — something which must be left to a discretion, a mere convenience, that tends to discipline, efficiency, and order of the public service — but it relates to the pay of an officer, a subject-matter not falling within the necessity of an “order, regulation, or instruction” of the Secretary of the Navy.
The pay of a public officer, whether civil or military, must be regarded as a subject on which Congress will necessarily legislate, unless, in the use of the power, they may impair the efficiency of a Department in the exercise of functions peculiarly executive. The regulations of the Army and the regulations of the Navy are given the force of law when they apply to mere detail of service which has not been regulated by, positive enactment. It is provided in the latter clause of section 1556 that lieutenants shall receive, “ when at sea, two thousand six hundred dollars,” and section 1571, Devised Statutes, provides : ,
“No service should be regarded as sea service except such as *153 are performed at sea under the orders of a Department and the vessels employed by authority of law.77
The service sued for in this case was performed under the order of the Navy Department, and was regarded, until August 1, 1882, as sea service within the meaning of the statute. The character of the service performed before said date was identical in fact with the service performed afterward; but it is insisted that the order of the Secretary changing the commission as to service changed in law the character of the service.
The findings show that the claimant performed the duties of an executive officer, which duties are similar to those of executive officers on board a cruising ship; that during the time he was required to have his quarters on board the vessel, to wear his uniform, aud was not permitted by the rules of the service to live with his family. The duty which the petitioner performed on board the training-ship was more arduous than duty on board a ship while sailing on the ocean or in foreign seas.
Section 1571 defines what is regarded as sea service — “ service performed at sea.77 The term “at sea77 is not without judicial and executive construction. Thesship New Hampshire, during the time covered by the claim, was in Narragansett Bay, an arm of the sea where the tide ebbs and flows. This we assume upon the authority of the case of Peyroux et al. v. Howard & Vanan (7 Pet., 342).
In the case of De Lovi v. Boit, decided by Justice Story, it is said: “In fact, what is ‘the sea7 or ‘the high sea7 has nothing to do with the bounds of counties, but it is ascertained by high and low water mark on the sea-coast, and by a parity of reasoning it should be the same in ports and havens.77 (2 Gallison, 428.) “ Sea service,” “ duty at sea,” “ performed at sea,” became the subject of executive construction in the Attorney-General’s Department, and is reported in 10 Opinions, 192:
“‘Duty at sea,7 then, is service ‘performed at sea.7 But when does this service begin ? I do not think it a fair construction to say that it begins only when the vessel leaves her port and goes to sea. If the words are to receive a literal construction, it cannpt be said that a vessel is ‘ at sea7 when lying in a port on her cruise, or even when proceeding up or down the Delaware or Potomac Biver. Captain Foote’s gun-boats, on *154 the Tennessee and Cumberland Rivers, are not literally ‘ at sea,’ and yet it would hardly be a safe construction to say that the service which he and his officers have recently performed with them on those rivers is not ‘ duty at sea,’ within the meaning of this act. A mere literal construction must, therefore, be discarded, and we are to adopt the one most in accordance with reason and justice.”
Congress, for reasons which will most readily occur to every person, have made a distinction in pay between the officer at sea and on shore, and if the claimant, by the character of the service and his situation with reference to the performance of his duties, comes within the clause “ at sea,” as used in section 1556, and explained in section 1571, then he is entitled to recover on the theory of his petition.
The words “at sea” and “performed at sea,” as used in the statutes, do not mean on the “high sea” beyond the sight of land, but upon the waters of the sea, subjected to such restrictions, regulations, and requirements as are incident to service at sea. When the claimant was ordered by the Department on board the ship New Hampshire to perform the duties performed by him, as shown by the findings, he became “ at sea;” he was then in the performance of duties “ at sea” within the meaning of section 1571, and his right of pay attached under section 1556, beyond the power of the Secretary to change as long as the elements of the service continued as marked by the character of the duties.
The legal essence of things cannot be changed by a mere name — by the volition of an executive officer in the discharge of executive duty. Section 1571 was intended by Congress to define w.hat is sea service, and it is not reserved to the Secretary of the Navy to perform that duty by regulation. If the section does not perform the function of definition in the clearest light, it is reserved to courts (which must ultimately construe the law) to gather, if possible, the purpose and will of the legislature from the best and highest sources of information.
By section 1571 the concurrence of two conditions is required to constitute sea services: First, they must be performed at sea; second, they must be under the orders of a Department and in vessels employed by authority of law. We have already determined that the ship of the claimant, situated as it was with reference to the claimant, was “at sea.” The duties which the claimant performed were under the orders of the *155 Department, made in April, 1882, and continued in force from that time to the bringing of this suit. It is true that on the 7th of July, 1882, the order of the Secretary of the Navy sought to change the legal effect of the services performed on the part of the claimant; but the order to perform the particular service remained' in force in all its legal integrity as given by the Secretary at the commencement of the service.
The judgment of the court is that the petitioner recover the sum of $1,122.29.