# UNITED STATES *v.* SYMONDS

## APPEAL FROM THE COURT OF CLAIMS.

Submitted December 6, 1886. — Decided January 10, 1887.

The sea-pay given to officers of the navy by Rev. Stat. § 1556 may be earned by services performed under orders of the Navy Department in a vessel employed, by authority of law, in active service in bays, inlets, road-steads, or other arms of the sea, under the general restrictions, regula-

tions and requirements that are incident or peculiar to service on the high seas.

The authority of the head of an Executive Department to issue orders and regulations under directions of the President to have the force of law is subject to the condition that they conflict with no act of Congress: and an order by the Secretary of the Navy that a service shall not be a sea service which Congress has directed shall be a sea service is invalid.

THIS was an appeal from a judgment of the Court of Claims. The case is stated in the opinion of the court.

*Mr. Attorney General* and *Mr. F. P. Dewees* for appellant.

*Mr. John Paul Jones* and *Mr. Robert B. Lines* for appellees.

MR. JUSTICE HARLAN delivered the opinion of the court.

The question in this case is, whether certain services of the appellee, a lieutenant in the navy of more than five years' standing, were performed "at sea," within the meaning of § 1556 of the Revised Statutes. That section provides as, follows:

"The commissioned officers and warrant officers on the active list of the navy of the United States, and the petty officers, seamen, ordinary seamen, firemen, coal-heavers, and employés in the navy shall be entitled to receive annual pay at the rates herein stated after their respective designations: . . . Lieutenants, during the first five years after date of commission, when at sea, $2400; on shore duty, $2000; on leave or waiting orders, $1600; after five years from such date, when at sea, $2600; on shore duty, $2200; on leave or waiting orders, $1800."

By an order of the Secretary of the Navy, June 30, 1881, the officer commanding the United States training-ship New Hampshire, then at Norfolk, Virginia, was authorized to enlist officers' stewards, cooks, and servants, such as were allowed for a vessel with her complement of officers, the order declaring that her officers "will be considered as attached to a vessel commissioned for sea service the same as other apprentice training vessels." On the first day of April, 1882, Symonds,

in obedience to orders, assumed the post of executive officer of the New Hampshire, and thereafter discharged the duties of that position, which were similar to those performed by executive officers of cruising ships. He also discharged other duties of a character more exacting and arduous than those on board of any other class of naval vessels. There was no change in the nature of his services after he reported for duty as executive officer of the New Hampshire. He was required to have his quarters on board, to wear his uniform, to mess on the vessel, and was not permitted by the rules of the service to live with his family. When he reported on board that ship she was stationed at Narragansett Bay, and, during most of his service thereon, was the flag-ship of the training squadron.

On the seventh day of July, 1882, the then Secretary of the Navy issued an order to the effect that "on and after the first day of August next, the New Hampshire, the Minnesota, the Intrepid, and the Alarm will not be considered in commission for sea service." There was, however, no change in the status of the ship on or after August, 1882, her equipment and complement of officers being those of a cruising ship.

From April 1, 1882, to July 31, 1882, appellee was allowed sea-pay, and commutation of rations at thirty cents per day; but from the latter date he was allowed only shore-pay of an officer of his grade, without rations or commutation therefor.

This suit was brought by appellee to recover the difference between pay for sea and shore duty as regulated by § 1556 of the Revised Statutes.

Section 1571 of the Revised Statutes — which is a reproduction of the third section of an act of June 1, 1860, increasing and regulating the pay of the navy, 12 Stat. 27, — provides that "no service shall be regarded as sea service except such as shall be performed at sea, under the orders of a Department and in vessels employed by authority of law." It is not disputed that the services of Symonds were performed under the orders of the Secretary of the Navy, and in a vessel employed with authority of law. If they were performed "at sea," his compensation therefor is absolutely fixed by § 1556. Does the statute confer upon the Secretary of the Navy, acting

alone or by direction of the President, the power to declare a particular service to be shore service if, in fact, it was performed by the officer "when at sea," under the orders of the Department and on a vessel employed with authority of law? By the navy regulations of 1876, it was declared that "duty on board a sea-going vessel of the Navy in commission, on board a practice ship at sea, or on board a coast-survey vessel actually employed at sea, will be regarded by the Department as sea service." p. 85. Assuming that the first clause of that regulation contemplates services at sea under the orders of the Department, in a vessel employed with authority of law, it is clear that all the different kinds of services described therein are services performed at sea in the meaning of § 1556. But they are to be deemed such, not because the Secretary of the Navy has announced that the Department will so regard them, but because they are, in fact, services performed at sea, and not on shore. If the regulations of 1876 had not recognized services "on board a practice ship at sea" as sea services, the argument in behalf of the government would imply that they could not be regarded by the courts, or by the proper accounting officers, as sea services; in other words, that the Secretary of the Navy could fix, by order, and conclusively, what was and what was not sea service. But Congress certainly did not intend to confer authority upon the Secretary of the Navy to diminish an officer's compensation, as established by law, by declaring that to be shore service which was, in fact, sea service, or to increase his compensation by declaring that to be sea service which was, in fact, shore service. The authority of the Secretary to issue orders, regulations, and instructions, with the approval of the President, in reference to matters connected with the naval establishment, is subject to the condition, necessarily implied, that they must be consistent with the statutes which have been enacted by Congress in reference to the navy. He may, with the approval of the President, establish regulations in execution of, or supplementary to, but not in conflict with, the statutes defining his powers or conferring rights upon others. The contrary has never been held by this court. What we now say is entirely consistent with

*Gratiot* v. *United States*, 4 How. 80, and *Ex parte Reed*, 100 U. S. 13, upon which the government relies. Referring in the first case to certain army regulations, and in the other to certain navy regulations, which had been approved by Congress, the court observed that they had the force of law. See also *Smith* v. *Whitney*, 116 U. S. 181. In neither case, however, was it held that such regulations, when in conflict with the acts of Congress, could be upheld. If the services of Symonds were, in the meaning of the statute, performed "at sea," his right to the compensation established by law for sea service is as absolute as is the right of any other officer to his salary as established by law. The same observations may be made in reference to the order of the Secretary of the Navy of July 7, 1882, which — without modifying the previous order that Symonds should perform the duties of executive officer of the New Hampshire — declared that that ship would not be considered as in commission for sea service after August 1, 1882. It does not appear that the Secretary had any purpose, by his order, to affect the pay of the officers of the ship as fixed by the statute. Other reasons doubtless suggested the propriety or necessity of its being issued. But his order is relied upon here as depriving Symonds of the right to sea-pay after the date last named. For the reasons stated, that order could not convert the services of Symonds from sea services into shore services, if they were, in fact, performed when "at sea."

We concur in the conclusion reached by the Court of Claims, namely, that the sea-pay given in § 1556 may be earned by services performed under the orders of the Navy Department in a vessel employed, with authority of law, in active service in bays, inlets, roadsteads, or other arms of the sea, under the general restrictions, regulations, and requirements that are incident or peculiar to service on the high sea. It is of no consequence, in this case, that the New Hampshire was not, during the period in question, in such condition that she could be safely taken out to sea beyond the main land. She was a training-ship, anchored in Narragansett Bay during the whole time covered by the claim of appellee, and was subject to such

regulations as would have been enforced had she been put in order and used for purposes of cruising, or as a practice ship at sea. Within the meaning of the law, Symonds, when performing his duties as executive officer of the New Hampshire, was "at sea."

*Judgment affirmed.*