# UNITED STATES *v.* STRONG.

## APPEAL FROM THE COURT OF CLAIMS.

No. 1381.   Submitted April 2, 1888. — Decided April 16, 1888.

Service, by order of the Secretary of the Navy, by an officer in the Navy as executive officer on a recruiting ship at anchor in port at a navy yard and not in commission for sea service, entitles him to receive pay for sea service. *United States* v. *Symonds*, 120 U. S. 46, affirmed and applied.

THE case is stated in the opinion of the court.

*Mr. Attorney General, Mr. Assistant Attorney General Howard,* and *F. P. Dewees* for appellant.

*Mr. Linden Kent* for appellee.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The claimant, Edward T. Strong, being a Lieutenant Commander in the United States Navy, by an order of the Secretary of the Navy of February 4, 1886, was directed to report for duty as executive officer on board the United States receiving ship Wabash at Boston, Massachusetts. The order designated his employment as "shore duty." In compliance with the order he reported for such duty on board the ship on February 20, 1886, and continued from that time to discharge the required duties on board such ship until May 11, 1886, when he was relieved from duty thereon. During that period he was allowed and paid only as for shore duty. He claimed to be entitled to receive pay for sea service. Judgment was rendered in his favor by the Court of Claims for $111.20 being the difference between shore pay and sea pay. From this judgment the United States prosecutes the present appeal.

From the findings of facts it appears that the Wabash is a receiving ship built of wood, about thirty-one years old, stationed at the navy yard in Boston for over twelve years past. The vessel is and has been used as a naval recruiting station

whilst at the Boston Navy Yard. There is a roof built over the deck. The ship is connected and communicates with shore by a rope. There is a large boat or scow that plies between the ship and the wharf by means of a crank and connected with the rope. Steam is used only for heating purposes and pumps. All the anchors have never been taken up at the same time. Row boats were also used in going to and from the ship. The Wabash has remained in the same place in which she was anchored since October 28, 1875, and has been and was, during the time of service thereon by the claimant, under the orders and direction of the Secretary of the Navy. During the period of the claimant's service thereon she was not in a safe condition for cruising. She is a sailing and steam vessel, and had on board sails, spars, and tackle; she was capable of being taken out to sea under steam, her machinery and boilers being sufficient for that purpose; she could have been taken out to sea under sail, but in the condition of her boilers and machinery and her sailing apparatus, without repairs, it would not have been, in either case, advisable or safe. The duties of executive officer of the vessel performed by the claimant were similar to those of executive officers on cruising ships. In addition to those he had other duties, which were more exacting and arduous than those on board cruising ships. During the time he was attached to the vessel the claimant was required to have his quarters on board, and was obliged to wear his uniform, to mess there, and was not permitted by the rules of the service to live with his family. The Wabash, during the time of the claimant's service thereon, was not in what was technically known as a commission for sea service. Duty on board a receiving ship since 1843, has not been regarded as sea service by the Navy Department. An order of the Department issued that year declared that "the receiving ships at the several stations are not to be considered vessels in commission for sea service, except, as may sometimes be the case, while going from one port to another."

In the case of *The United States v. Symonds,* 120 U. S. 46, 50, it was decided: "That the sea pay given in paragraph 1556 may be earned by services performed under the orders of

the Navy Department in a vessel employed, with authority of law, in active service in bays, inlets, roadsteads, or other arms of the sea, under the general restrictions, regulations and requirements that are incident or peculiar to service on the high sea. It is of no consequence in this case that the New Hampshire was not, during the period in question in such condition that she could be safely taken out to sea beyond the main land. She was a training ship, anchored in Narragansett Bay during the whole time covered by the claim of appellee, and was subject to such regulations as would have been enforced had she been put in order and used for purposes of cruising, or as a practice ship at sea. Within the meaning of the law, Symonds, when performing his duties as executive officer of the New Hampshire, was at ' sea.' "

We are unable to find any ground of distinction between the present case and that of Symonds. It results that the claimant was entitled by law to pay for sea service. The judgment of the Court of Claims is accordingly

*Affirmed.*