## UNITED STATES *v.* BARNETTE.

### APPEAL FROM THE COURT OF CLAIMS.

No. 325. Submitted December 21, 1896. — Decided January 25, 1897.

A lieutenant in the Navy, assigned by order of the Secretary of the Navy to duty as executive officer of a vessel of the United States, furnished by the Secretary of the Navy to the State of New York as a school ship, is entitled to sea pay, as well while the vessel is attached to a wharf in the harbor of New York, as while she is on a cruise, and although this service is called, in the Secretary's order for his detail, "employment on shore duty," and notwithstanding he is receiving pay from the State as instructor in its nautical school upon the vessel.

THIS was a claim by a lieutenant in the Navy of the United ·States for sea pay while on board the St. Mary's in the harbor of New York. The facts found by the Court of Claims were in substance as follows :

The St. Mary's was a sailing vessel owned and employed by the United States; and had been furnished for educational purposes by the Secretary of the Navy, upon the application of the Governor of the State of New York, under the act of Congress of June 20, 1874, c. 339, which is copied in the

margin.[1] The command of the vessel was always retained' in an officer of the United States Navy. The nautical school upon this vessel was established by the board of education of the city of New York, under the statute of the State of New York of July 1, 1882, c. 410, the material provisions of which are likewise copied in the margin.[2] The object of the nauti-

---

[1] An act to encourage the establishment of public marine schools.

The Secretary of the Navy, to promote nautical education, is hereby authorized and empowered to furnish, upon the application in writing of the Governor of the State, a suitable vessel of the Navy, with all her apparel, charts, books and instruments of navigation, provided the same can be spared without detriment to the naval service, to be used for the benefit of any nautical school, or school or college having a nautical branch, established at each or any of the ports of New York, Boston, Philadelphia, Baltimore, Norfolk and San Francisco, upon the condition that there shall be maintained at such port a school, or branch of a school, for the instruction of youths in navigation, seamanship, marine enginery, and all matters pertaining to the proper construction, equipment and sailing of vessels, or any particular branch thereof. And the President of the United States is hereby authorized, when in his opinion the same can be done without detriment to the public service, to detail proper officers of the Navy as superintendents of, or instructors in, such schools: Provided, that if any such school shall be discontinued, or the good of the naval service shall require, such vessel shall be immediately restored to the Secretary of the Navy, and the officers so detailed recalled: And provided further, that no person shall be sentenced to, or received at, such schools as a punishment or commutation of punishment for crime. 18 Stat. 121.

[2] SEC. 1068. The board of education are authorized and directed to provide and maintain a nautical school in said city, for the education and training of pupils in the science and practice of navigation; to furnish accommodations for said school, and make all needful rules and regulations therefor, and for the number and compensation of instructors and others employed therein; to prescribe the government and discipline thereof, and the terms and conditions upon which pupils shall be received and instructed therein and discharged therefrom, and provide in all things for the good management of said nautical school. And the said board shall have power to purchase the books, apparatus, stationery and other things necessary or expedient to enable said school to be properly and successfully conducted; and may cause the said school, or the pupils. or part of the pupils thereof, to go on board vessels in the harbor of New York, and take cruises in or from said harbor, for the purpose of obtaining a practical knowledge in navigation and of the duties of mariners. And the said board are hereby authorized to apply to the United States Gov-

cal school is to instruct young men in maritime matters, so as to fit them for any service connected with maritime life, leaving them free to go into the Navy, or into the merchant marine. The instruction is in seamanship, navigation, .sailmaking and everything pertaining to a seaman's life.

The claimant, on January 1, 1891, reported to the commander of the St. Mary's, for duty as executive officer on board of her, and there served ás such until October 24, 1893, (the date of filing this petition,) in obedience to an order signed by the Secretary of the Navy, dated December 30, 1890, and in the usual form of orders assigning officers to duty on school ships, as follows:

"Navy Department, Washington, December 30, 1890. Sir: You are detached from the Minnesota on the 31st instant, and will report to Commander A. S. Crowninshield on the same day for duty as executive on board the nautical school ship St. Mary's as the relief of Lieut. C. C. Cornwell. This employment on shore duty is required by the public interests, and such service will continue until the 31st of December, 1893, unless it is otherwise ordered."

Throughout the claimant's service on the St. Mary's, he received no orders, except from her commander, an officer of the Navy; and through him his junior officers received the orders of the commander. Her complement of officers was the commander, the executive officer, a lieutenant, an ensign and a surgeon. Her crew consisted of twenty-two

ernment for the requisite use of vessels and supplies for the purpose above mentioned.

SEC. 1070. The board of education shall appoint annually at least three of their number, who shall, subject to the control, supervision and approbation of the board, constitute an executive committee for the care, government and management of such nautical school, under rules and regulations so prescribed, and whose duty it shall be, among other things, to recommend the rules and regulations which they deem necessary and proper for such school.

SEC. 1071. After the establishment and organization of the said school, the expenses thereof, and of carrying out the provisions of this chapter, shall be defrayed from the moneys raised by law for the support of common schools in the city and county of New York. 2 New York Laws of 1882 ¶ 300.

men of different grades and ranks, all employed by the city of New York. Her commander was required by the regulations of the Navy to report semi-annually to the Secretary of the Navy upon the conduct and professional ability of his subordinate officers, and upon the efficacy of the men.

The St. Mary's, each year, went upon a cruise, lasting from about the middle of May to some time in October; and during the rest of the year was attached to a dock in the harbor of New York. While she was not cruising, the claimant lived on board, and was on duty on board every day, wearing his uniform, and doing the same duty, and subject to the same regulations, as while the ship was on the high seas; and in the matter of quarters, mess and uniform, there was no difference, whether the vessel was under sail, or lying at anchor, or tied to a wharf. The claimant's duties as executive officer were the care and preservation of the ship, looking after the crew, and attending to the details of the organization and police of the ship.

The claimant also acted as instructor of the pupils of the nautical school on board the St. Mary's; and was paid for his services in that capacity by the board of education of the city of New York.

In the routine of the Navy Department, officers are usually assigned alternately to sea and shore duty for periods of about three years each. For two and a half years prior to December 31, 1890, the claimant had been attached to the United States steamship Galena, on a cruise, performing sea duty and receiving sea pay.

The claimant had been in the Navy since 1872; and during his service on the St. Mary's was entitled to $2600 a year while on sea duty, and $2200 while on shore duty. The accounting officers of the United States allowed him sea pay while the St. Mary's was on a cruise, but only shore pay while she was lying at a wharf in the harbor of New York.

The Court of Claims held that he was entitled to sea pay during the whole time of his service on the St. Mary's, and gave judgment accordingly in his favor for $780.25. 30 C. Cl. 197. The United States appealed to this court.

Mr. Assistant Attorney General Dodge and Mr. Assistant Attorney Gorman for appellants.

Mr. John S. Blair and Mr. Charles Abert for appellee.

Mr. JUSTICE GRAY, after stating the case, delivered the opinion of the court.

By the statute of the United States, the officers of the Navy receive higher pay "when at sea," than when "on shore duty," or "on leave, or waiting orders"; and the pay of the claimant, being in the second five years of his service as lieutenant, was "when at sea, $2600; on shore duty, $2200; on leave, or waiting orders, $1800." Rev. Stat. § 1556. And by § 1571, "no service shall be regarded as sea service, except such as shall be performed at sea, under the orders of a Department, and in vessels employed by authority of law."

To constitute sea service, then, three things, and three only, are necessary. The service must be performed "at sea"; "under the orders of a Department"; and "in vessels employed by authority of law."

In order to come within the phrase "at sea," as used in this statute, it is not necessary that the vessel upon which the service is performed should be upon the high seas. It is enough that she is waterborne, even if at anchor in a bay, or port or harbor, and not in condition presently to go to sea. It has accordingly been adjudged by this court that a vessel is "at sea," within the meaning of the statute, although she is used as a training ship, anchored in a bay, and not in a condition to be taken out to sea, beyond the main land; or is used as a receiving ship, at anchor in port at a navy yard, communicating with the shore by a rope, and having a roof built over her deck, and not technically in commission for sea service. United States v. Symonds, 120 U. S. 46; United States v. Bishop, 120 U. S. 51; United States v. Strong, 125 U. S. 656. The claimant, while the St. Mary's was not on a cruise, but anchored at and tied to a wharf in the harbor of New York, lived on board of her, wore his uniform, and was subject to

the same regulations, as while she was upon the high seas; and was therefore "at sea," so far as affected his rate of pay, during the whole period of his service as her executive officer. The fact that this service was called, in the order of the Secretary of the Navy assigning him to duty upon this vessel, "employment on shore duty," is immaterial. The material question is whether the service was, in fact, performed at sea, and not on shore; and not upon the name by which the Secretary of the Navy was pleased to designate it. As was said by this court in *United States* v. *Symonds*, above cited, "Congress certainly did not intend to confer authority upon the Secretary of the Navy to diminish an officer's compensation, as established by law, by declaring that to be shore service which was in fact sea service, or to increase his compensation by declaring that to be sea service which was in fact shore service." 120 U. S. 49.

The service of the claimant was clearly performed "under the orders of a Department." It was in obedience to an order of the Department of the Navy, that he reported to the commander of the St. Mary's, and served as her executive officer; and, throughout his service upon her, he received no orders, except from her commander, himself an officer in the Navy. As was well said by Judge Nott, now Chief Justice of the Court of Claims, in delivering the opinion of that court in the case at bar, "The order which placed the St. Mary's on duty as a school ship, and, to a certain extent, at the disposal of the board of education, did not transfer the vessel to any other authority than that of the United States. Possession, control, discipline and authority were all retained by the Government. The officers doubtless carried out the directions of the board of education; but they did not do so because they were the orders of the board of education, but because they were sent by the Secretary of the Navy to New York to do so." 30 C. Cl. 207.

It is no less clear that the St. Mary's was one of the "vessels employed by authority of law" by the United States. The Court of Claims has distinctly found, as a fact, that she was "a sailing vessel owned and employed by the United States."

Both the furnishing of the St. Mary's by the Secretary of the Navy to the State of New York for a ship to maintain a nautical school upon, and the detail of the claimant as executive officer of the vessel while she was used for that purpose, were pursuant to the powers expressly conferred upon the President of the United States and the Secretary of the Navy by the act of Congress, entitled " An act to encourage the establishment of public marine schools." Act of June 20, 1874, c. 339 ; 18 Stat. 121.

The duties of executive officer of the St. Mary's having been performed by the claimant as a lieutenant in the Navy of the United States, at sea, under the orders of the Department of the Navy, and in a vessel employed by the United States by authority of law, he was entitled, during the whole period of his service, whether the vessel was attached to a wharf, or was sailing on a cruise, to the rate of pay which the statute allowed to him " when at sea," notwithstanding that during the same period he also received pay from the State of New York for the performance of the distinct, but quite consistent, duties of instructor in its nautical school upon this vessel, the performance of which, indeed, by naval officers, was manifestly contemplated and intended by the act of Congress, and by the orders of the Secretary of the Navy.

*Judgment affirmed.*

MR. JUSTICE FIELD and MR. JUSTICE BREWER took no part in the consideration and decision of this case.