Howry, J.,
delivered the opinion of the court:
The ultimate fact to be determined in this casé is whether the service rendered by plaintiff was service performed at sea within the meaning of section 1556 of the Be vised Statutes, which fixes the pay of naval officers and others at sea.
By an order of the Secretary of the Navy, dated April 9, 1892, and while plaintiff was upon the active list of the Navy and commanding officer of the United States naval station at Puget Sound, plaintiff was directed to assume command of the U. S. S. Nipsic (then at anchor in the bay), in addition to the duties then being performed by him as commander of the station. Pursuant to this order plaintiff assumed command of the ship, continuing in such command for the time shown by the findings, when he was relieved by another order of the Secretary, to be examined by a retiring board. Plaintiff’s quarters were continuously on board the vessel, and he messed there with a number of men employed by the Bureaus of Yards and Docks and Steam Engineering, and these men had regular duties during the day and a watch was kept during the night. The fixe bill was posted and the men regularly exercised at fire drill. Steam was kept up for heating and pumping, and a large steam launch was attached to the ship for use in visiting the station and for other purposes.
The crew, consisting of the force stated, was small, but this made necessary the exercise of greater care and vigilance on the part of the commanding officer and men in protecting the vessel and property on board, as well as themselves; during the heavy blows encountered while the vessel was thus anchored in the bay. While in command and on duty plaintiff always wore his uniform. The ensign, jack, and pennant were kept flying according to regulations; a large quantity of supplies belonging to the Bureaus of Navigation, Equipment, Ordnance, and Steam Engineering were on board; and the regular quarterly returns were made out and transmitted by the plaintiff. He called upon the commanding officers of such men-of-war as visited the station, and received calls in return, and all the regulations applicable to such a vessel at sea were observed.
It is contended by the defendants that inasmuch as the ship upon which the services were performed had no regular naval crew aboard and the commanding officer was not required to *292 perform such duties as are incident to a naval vessel, whether such vessel be at sea or in commission ás a receiving ship, and as the crew, being civilians, could not be subjected to the rules and discipline of the Navy, it was impossible to carry out all the routine of a receiving ship, and that the facts make this a different case from those where the court has awarded judgment for sea pay to officers on receiving ships. In support of these contentions, we are referred to a recent opinion in a case something like this, where the commanding officer of a receiving ship was also employed on shore, as in this case, a large portion of the time, arid where it was held that the incidental services on the ship did not constitute service at sea. (McGowan’s Oase, 4 Comp. Dec., 395.)
The statute provides: “No service shall be regarded as sea service except such as shall be performed at sea, under the orders of a department and in vessels employed by authority of law.” (Sec. 1571, Bev. Stat.)
The mere location or condition of the. ship in determining the right of pay, the Nipsic being in the bay and not on the high seas, is out of the case. In order to come within the phrase “at sea” it is not necessary that the vessel upon which the service is performed shall be upon the high seas. It is enough that she is water borne, even if at anchor in a bay, or port, or harbor, and not in condition presently to go to sea. A vessel is “at sea” within the law, although used as a training ship, anchored in a bay, and not in a condition to be taken out to sea beyond the mainland, or used as a receiving ship, at anchor in port at a navy-yard, communicating with the shore by a rope, and having a roof built over her deck, and not technically in commission for sea service. (United States v. Symonds, 120 U. S. B., 46; United States v. Bishop, id., 51; United States v. Strong, 125 U. S. B., 656; United States v. Barnette, 165 U. S. B., 174, affirming this court, 21 C. Cls. B., 148; id., 215; 23 id., 10; 30 id., 197.)
The services performed by plaintiff as commander of the vessel named in this case were under the orders of the Navy Department. While discharging his duties as master of the naval station he was ordered to take command of the vessel at sea. He did so in obedience to a department order. It is true he was not relieved of his shore duties eo nomine, but he was required to go to the sea, and he did in fact go there. In taking *293 command of the vessel he became subject, and in fact was subjected to such restrictions, regulations, and requirements as are incident to service at sea. His quarters were on board, and he was in the uniform of a commander when on duty. He was exposed to the dangers and hardships incident to service at sea and responsible as the commander of a vessel of the Navy for its safety as far as the means given to him would allow. The fact that the vessel was without regular seamen, but manned by laborers from the dockyards and ordnance and engineering service did not diminish the responsibility of the commander, but on the contrary increased it.
The vessel was employed by authority of law. The Nipsic was a steamship owned and employed by the United States, not in navigation, but still employed in the service. It was not in commission, but this was no more essential than that it should be employed in navigation. As commander, the plaintiff was subject to such regulations as would have been enforced had the ship been supplied with a regular crew. A commander of a ship with employees of the Government who are not seamen is still a commander, and the fact that the service performed on board the ship at sea, although accompanied with a requiremen t to look after matters on shore, does not bar the right to claim for the sea service. If the defendants imposed upon the plaintiff mixed duties, which involved shore service and service at sea at one and the same time, there is nothing inconsistent in the claim for the sea service, if actually performed, although the shore duty was also performed by the same officer from his post on an arm of the sea. The same person performing sea service and shore duty during the same period of time can not claim both shore pay and sea service for such time; but where it is shown the officer charged with these dual duties lived upon the sea in command of a vessel employed by authority of law, there is a greater reason to regard the shore duty the incident of the sea service than to say that the shore duty is paramount to the other. Both kinds of service are active in the performance of a duty, differing in degree, but not affecting the question of compensation for the higher service. Such a case can not be distinguished in principle from the adjudicated cases. The right to pay for a sea service attached when that kind of service began, and this right continued as long as the service continued, independent of the order of the Secre *294 tary of tbe Navy by which the service on board the ship was declared to be merely additional to that on shore. The service at sea was not determined by the order to mean shore service when in law and fact it was not shore service. The rules of the service imposed upon the plaintiff duties incident to a ship at sea, and the substantial essence of the transaction and not the mere name of it must govern the amount of the pay. (Symond’s Oase, supra.)
Judgment for plaintiff in the sum of $323.30 will be entered; and judgment for $1,712.18 will likewise be entered in the case of John 0. Morong, submitted with this case and similar to it in all respects except as to the amount and date of service and the consequences arising from the service upon his health. -