Weldon, J.,
delivered the opinion of the court:
Tbe claimant, on the 4th of December, 1896, was a commander in the United States Navy, and on or about that date he received from the Secretary of the Navy the communication following, to wit:
“Navy Department,
“ Washington, December 1896.
“ Sir: On the 14th instant you will regard yourself detached from duty in the Bureau of Navigation, Navy Department, Washington, D. C.; will proceed to Newport, B,. I., and report to the commandant of the naval station at that place on December 15 for the command of the U. S. T. S. Constellation and the training station, as the relief of Commander Francis W. Dickins, U. S. N.
“This employment on shore duty is required by the public interests.
“Very respectfully, “H. A. Herbert,
“Secretary.
“ Commander John McGowan, U. S. N.,
“Bv/r&m of Navigation, Na/vy Department,
Washington, D. (7.”
In pursuance of such order he reported at Newport and entered upon the discharge of his duties, as shown in the findings, for which he has been paid upon the basis of shore pay; and he now prosecutes this suit that he may be paid at the rate of sea pay.
During the claimant’s service under the order, the-instruction of the naval apprentices was carried on on board of the United States training ship Constellation in commission, and also on shore. The Constellation had a crew of 17 officers and 152 enlisted men, and at the time there were under instruction at the training station 290 apprentices. The apprentices ivere quartered in barracks at the station and were borne on the muster rolls of the Constellation. Claimant during the performance of his duty was responsible for the ship and her stores, her cleanliness, discipline of the crew, and the many drills, exercises, and inspections that frequently occur on board, in the same manner as required of commanding officers of a receiving ship. He was also responsible for the instruction of the apprentices quartered in the barracks on shore, where they were instructed in branches that can not be con *68 veniently taught on board the Constellation, owing to lack of room, such as gymnastics, small-arm drill, infantry tactics, artillery, aiming, etc. The apprentices were messed in a building- about one-eighth of a mile from where they were berthed. Messing arrangements, preparation of food, etc., were under the supervision of the commanding officer of the Constellation, He was required to pay the entire expense of his mess while on board or on the island under his jurisdiction. .For convenience he took his meals at the quarters assigned him on the island. He was at all times required to wear his uniform and otherwise conform to the usual military regulations prescribed.for vessels of the United States Navy in active service. He had also under his command a guard of marines, quartered in a building still more remote, and had charge of the grounds and general police of the island of about 100 acres ceded to the United States.
It is not practicable to segregate the time spent in actual duty on shipboard from that spent in the performance of whatever duties were required of him on shore, as ho was called on day and' night to supervise matters on board ship, in the barracks, and on the island. The Departmant assigned him quarters on shore, in a central position, in addition to those assigned on board the Constellation by regulations to the commanding officer of the Constellation and training station, where he would be, ordinarily, in a better position to supervise and to attend to certain calls in the performance of his duty. When the claimant took command of the Constellation, and when he gave it up, all the formalities required by navy regulations for a ship in commission were observed. From the mast of the ship the pennant and ensign were flown every day and the jack on Sundays and holidays. There were attached to the ship line officers, medical and pay officers, a chaplain, an engineer, warrant officers, and seamen. The care and responsibility on the ship was the same that he would have had had his ship been temporarily in another harbor. The ship was fit to go to sea upon five days’ notice.
The question presented by the facts of this case is what is the legal compensation of the claimant for the time alleged in the service under order of December 4, 1896, assigning him *69 to duty at Newport, R,. I., in connection with the service contemplated by the order, such service being divided between duties on board the ship Constellation and on shore incident to the instructions of the apprentices quartered in the barracks on shore. It will be seen by the order that the service to which the claimant was attached was designated by the Secretary of the Navy as “ employment on shore duty.”
It has been held by this court and in substance affirmed by the Supreme Court that the Secretary of the Navy can not arbitrarily change and classify by an order the character of the duty to be performed, whether shore or sea duty.
In the case of Symonds v. United States (21 C. Cls. R., 148) it is in substance said that the Secretary of the Navy can not change the character of an officer’s service from sea service to shore service by simply ordering that it be so regarded. The Supreme Court affirmed that view of the law both as to the Strong and the Symonds case. (United States v. Strong, 125 U. S. R., 656.) We cite these cases for the purpose of showir g that the mere designation of the Secretary as shore duty will not have the legal effect of changing the quality of the service.
The disallowance of the claim by the Department was upon the theory that the paramount duty of the claimant was on land and not on the sea or ship. The claimant did perform some service at sea in a ship under orders of the Department and in a vessel employed by authority of law; but if the service which he performed on land in the barracks and the service on the ship is to be regarded as a unit of service, can it be said that he was in the discharge of sea duty in derogation of the order of the Secretary designating it as shore duty ?
While the order of the Secretary can not change the essence of the service by a mere name, the fact that he designated the duty as shore duty is an indication of the construction of the Secretary that, owing to the mixed condition of the service to be performed, it was construed to be shore duty, and hence it was so designated in the order.
The findings show, that on shore there were 290 apprentices quartered in barracks for whose instruction the claimant was responsible, and that such instruction could not be given on board the ship, as indicated by the different branches of mili *70 tary culture taught under the supervision and control of the claimant, and that he was subject to certain duties and restrictions as commandant of the ship. The findings clearly indicate that his most arduous and responsible duties were discharged on shore and not on the ship. The ship was the incident and the shore the principal.
Claimant had under his command a guard of marines quartered in a building, had charge of the grounds, and general police of the island of about 100 acres. The quarters assigned to him on shore, in a central position, were in addition to those on board the Constellation by the regulations.
It may be said that the assignment to the claimant of quarters on shore suspended or superseded the assignment by the regulations of quarters on board the ship.
The order of the Secretary assigning him to duty in the command of the ship and the training station, and the evidence clearly show that the training station had incident to it the paramount performance of the duty as the result of the conditions existing at the place to which he was assigned.
In the case of Wykoff v. United States (3d C. Cls. R., 293) the court gave a judgment for the claimant where the facts showed á mixture of shore and sea service, upon the ground that the shore service was the incident and not the paramount duty. When the duty partakes of the character of sea service and shore duty, the fact of each particular case must be considered; and if from the whole case there is a preponderance in favor of either service the service having the paramount character must constitute the basis on which to predicate the right of payment.
In this case it is the judgment of the court that the service charged for was in legal contemplation in the performance of shore duty, and the petition is therefore dismissed.