Weldon, J.,
delivered the opinion of the court:
The claimant is an officer in the. United States Navy, to wit, a chief engineer, and was serving as such on the 12th day of December, 1898.
On that date the following order was directed to him by the Secretary of the Navj7:
“Sir: Proceed to League Island, Pa., and report to the commandant of the navy-yard at that place for duty in charge of the machinery of the TJ. S. S. Columbia and Minneapolis.”
*102 Thereafter, to wit, on the 30th day of January, 1899, he received the following order from the Secretary of the Navy:
“ Sir: Report immediately to the commandant of the navy-yard, League Island, Pa., and take charge of the machinery of the U. S. S. Yankee. This clxdy is in addition to your present duties.”
Thereafter, to wit, on the 15th day of February, 1899, the following order was directed to him by the Secretary of the Navy:
“Sir: Upon the U. S. S. Columbia, Minneapolis, and Yankee being placed out of commission, you will regard yourself detached from duty in charge of the machinery of these vessels, and'from such other duties as may have been assigned you, and report to the commandant of the navy-yard, League Island, Pa., for special duty at that yard in connection with the care and preservation of machinery of naval vessels laid up at that yard. This employment on shore duty is required by the public interests.”
Claimant reported in obedience to first of said orders on December 16,1898. In obedience to the second of said orders he reported on February 4, 1899, to the commanding officer of the U. S. S. Yankee. Ho further reported in pursuance of his orders of February 15, 1899. .On April 4, 1899, he was detached from the above duties on the latter date. On April 14, 1899, the Chief of the Bureau of Navigation addressed the following to claimant, indorsed on claimant’s letter of April 11, 1899:
“Respectfully returned to Chief Engineer Hannum with the information that it was the intention of the Department that he should be attached to the U. S. S. Columbia and Minneapolis in accordance with order of December 12 last.”
During the period of claimant’s service under the orders above set forth, he lived on board the U. S. S. Columbia, conforming to all the regulations governing vessels in commission in the same manner as other officers attached to said vessel— that is, he occupied a room, paid mess bills, and absented himself onty by permission from the commanding officer on each and every occasion. Claimant was paid by the paymaster of the Columbia for the period at the rate of §4,400 per annum, being the sea pay of an officer of such grade at sea, together with commutation of rations at 30 cents per diem, but after *103 the decision of the Comptroller of May 11, 1898, claimant’s pay was reduced to §2,800 per annum, being the pay of an officer of his grade on shore duty, and the difference was checked against and refunded by him to the United States. The question presented by these facts is whether claimant is to be paid for sea service or shore service. If it is his legal right to lie paid for sea service, then he is entitled to recover on the basis of that service; and there should be refunded wrhat has been deducted and what is due him upon the legal theory that the service came within the term ‘ ‘ sea service. ” The question of sea service and shore service has been the subject of much litigation in this court; and many cases have been decided giving a construction of the statutory right of parties claiming pay on the basis of sea service as against the basis of shore service.
Section 1511, Revised Statutes, provides: “ No service shall be regarded as .sea service except such service as shall be performed at sea under the orders of the Department and in ves-, seis emplojmd by authority of law.” The service in this case was performed at sea within the meaning of the law, and on a vessel emploj''ed by authority of law; it being performed on a vessel of the United States in the naval serviee.
In the case of United States v. Barnett (165 U. S., 179), it is said: “The fact that this service was called, in the order of the Secretary of the Navy assigning him to duty upon this vessel, ‘employment on shore duty’ is immaterial.” The material question is whether the service was,' in fact, performed at sea and not on shore; and not upon the name the Secretary was pleased to designate it. As was stated in the case of United States v. Symonds (120 U. S., 49): “Congress certainly did not intend to confer authority upon the Secretary of the Navy to diminish an officer’s compensation, as established by law, by declaring to be shore duty that which was in fact sea service, or to increase his compensation by declaring that to be sea service which was in fact shore service.” The cases cited in the Supreme Court are cases in which the judgments of this court have been affirmed upon the question as to whether certain services came within the classification of sea or shore service. It was held in the case of Strong (125 U. S., 656), in substance, that it is of no consequence *104 that the ship was not during the period in question in a condition in which she could be taken out to sea. She was anchored in the bay and was subject to such regulations as she would have been had she been put in order for a cruise or as a practice ship at sea. While the order of the Secretary in designating the service as shore duty is not conclusive as to the character of the duty, in doubtful cases, as was held in the Graham case at this term of court, it is entitled to consideration as indicating the character of the services; but the essence of the services and the legal right of the claimant to recover compensation can not be changed bj7- the designation of the service as shore duty. It is the opinion of the court that the claimant has a right to recover upon the basis of sea service in the sum of $454.31.