Peelle, J.,
delivered the opinion of the court:
On August 31, 1897, the claimant, then and during the service herein claimed for, a lieutenant-commander in the United States Navy, was on shore duty as hydrographic inspector of the Coast and Geodetic Survey, and on that date the Superintendent of said Survey issued an order directing him to “proceed to Annapolis, Md., and assume temporary command of the Coast and Geodetic Survey schooner Matchless on September 1 proximo, as the relief of Lieut. E. H. Tillman, U. S. Navy.”
In compliance with said order the claimant took command of the vessel and so continued in command until March 31, 1898, a period of seven months, for which service he was paid at the rate of $2,400 per annum, being the shore pay of his grade, as provided by .Revised Statutes, section 1556. He claims the difference between that rate and the sea pay of his grade ($2,800), amounting to $233.33.
And if the service aforesaid should be held to be sea service, he further claims the commutation for the navy ration provided for bj7 Revised Statutes, sections 1578 and 1585.
The question presented for decision therefore is whether the claimant’s service as commander of the Coast and Geodetic Survey vessel was sea service within the meaning of Revised Statutes, section 1571, which provides that—
“No service shall be regarded as sea service except such as shall be performed at sea, under the orders of a Department and in vessels employed by authority of law.”
*108 The character of the claimant’s service while in command of said vessel, as sot. forth in finding u, was that ho was required
“ to enlist and discharge the crew, pay off the crew, inspect the vessel, see to her equipment and care, sign and approve the official returns, and in general attend to the duties of commanding officer, but these duties do not require his continued presence on board. He is, however, so near to the station of the vessel, Baltimore, Md., or Chesapeake Bay, that he can repair on board at short notice.”
The claimant’s duties as hydrographic inspector were, as set forth in said finding, “ of far more importance” than his duties as commanding officer of the vessel.
In respect of what constitutes sea service within the meaning of section 1571, the case of Symonds v. United States (21 C. Cls. R., 148) is in point. There the Secretary of the Navy had issued an order declaring that certain training-ships “ will not be considered in commission for sea service.” The question was as to whether the officers serving on such vessels were entitled to sea pay, the court said:
“ The words ‘ at sea’ and ‘ performed at sea,’ as used in the statutes, do not mean on the ‘high sea’ beyond the sight of land, but upon waters of the sea, subject to such restrictions, regulations, and requirements as are incident to service at sea. When the claimant was ordered by the Department on board the ship New Hampshire to perform the duties performed by him, as shown by the findings, he hecame ‘ at sea;’ he was then in the performance of duties ‘ at sea ’ within the meaning of section 1571, and his right of pay attached, under section 1556, beyond the power of the Secretary to change as long as the elements of the service continued as marked bjr the character of the duties.”
That case was affirmed by the Supreme Court (120 U. S., 46-50), wherein the court, among other things, said:
“ We concur in the conclusion reached by the Court of Claims, namely, that the sea pay given in section 1556 may bo earned by services performed under the orders of the Navy Department in a vessel employed, with authority of law, in active service in bays, inlets, roadsteads, or other arms of the sea, under the general restrictions, regulations, and requirements that are incident or peculiar to service on the high sea. It is of no consequence in this case that the New Hampshire was not, during the period in question, in such condition *109 that she could be safety taken out to sea beyond the mainland. She was a training ship, anchored in Narragansett Bay during the whole time covered by the claim of appellee, and was subject to such regulations as would have been enforced had she been put in order and used for purposes of cruising, or as a practice ship at sea. Within the meaning' of the'law, Symonds. when performing his duties as executive officer of the New Hampshire, was ‘ at sea.’ ”
In the similar case of Bishop v. The United States (21 C. Cls. R., 215) this court reaffirmed the principles laid down in the Symonds case, and that case was also affirmed by the Supreme Court (120 U. S., 51).
In the case of Strong v. The United States (23 C. Cls. R., 10) the claimant was ordered to duty as executive officer on board of a receiving ship anchored at the nai’y-yard in-Boston Harbor, and the claimant was allowed sea pay on the authority of the Symonds' case. That caso ivas also affirmed by the Supreme Court (125 U. S., 650).
In the case of Aulick v. The United States (27 C. Cls. R., 109), where a naval officer was assigned to duty on a monitor at anchor in the James River, being subjected to the restrictions, regulations, and requirements incident to sea service, he was allowed to recover sea pay.
In the case of Barnette v. The United States (30 C. Cls. R., 197), a lieutenant in the Navjr was assigned to duty as executive officer on a vessel used for the nautical school of the city of New York, the vessel having been furnished for that purpose by the Secretary of the Navy, under the authoritjr of the act of June 20, 1874 (18 Stat. L., 121), authorizing him to do so on the -application of the governor of a State. The court held that the vessel so employed was by authority of law within the intent of section 1571, and that an officer ordered to service on board of such vessel was acting under the orders of the Department and entitled to sea pay.
On appeal that case ivas affirmed (105 U. S., 174), where the court, among other things, said:
“In order to come within the phrase ‘at sea,’as used in this statute, it is not necessary that the vessel upon ivhich the service is performed should be upon the high seas. It is enough that she is water borne, even if at anchor in a bay, port, or harbor and not in a condition presently to go to sea. *110 It has correctly been adjudged by this court that a vessel is ‘at sea’within the meaning of the statute, although she is used as a training ship, anchored in a bay and not in a.condition to be taken out to sea beyond the mainland; or is used as a receiving ship, at anchor in port at a navy-yard, and connected with the shore by a rope and having a roof built over her deck and not technically in commission for sea service.”
In that case, though the vessel upon which the officer served was tied to a wharf in the harbor of New York, he lived on board, wore his uniform, and was subject to the regulations respecting sea service.
In the case of Wyckoff v. The United States (34 C. Cls. R., 288), the officer, while in command of, the naval station at Puget Sound, was ordered, in addition to such duties, to assume command of the U. S. S. Nipsic, at anchor in the bay, and he did so and retained command until released by an order to appear before a retiring board. The force on the vessel was in the employment of the Bureau of Yards and Docks, but the regulations applicable to’ a vessel at sea were observed, and the officer’s quarters remained continuously on board the vessel. On the authority of the cases cited the claimant was allowed to recover sea pay.
In the case of Hannum v. The United States (36 C. Cls. R., 99), the officer, a chief engineer, was directed to proceed to League Island Navy-Yard, Pa., for duty in charge of the machinery of the U. S. S. Columbia and the Minneapolis, and later to take charge of the U. S. S. Yankee at the same place, the latter being duty in addition to the former. Later, those vessels being out of commission, the officer was detached therefrom and directed to report to the commandant of the nav}1-yard at the same place for special duty at the yard in connection with the care and preservation of machinery in the naval vessels laid up at that yard. The employment was designated by the Secretary of the Navy as shore duty. During the claimant’s service in charge of machinery of the vessels aforesaid he lived on board the U. S. S. Columbia and conformed to all the regulations governing vessels in commission in the same manner' as other officers attached to seagoing vessels, and for that reason he was allowed to recover the sea pay of his grade.
*111 We have thus reviewed the authorities cited by .the claimant in support of his claim for sea pay while serving on the Coast and Geodetic Survey vessel.
But it must be noted that neither of them is controlling in 'the present case.
Here the claimant appears to have been the only naval officer on board the vessel; the time he served on board is not shown, though it appears that his duties were not such as required his constant presence on board, and that his most important dutjr was that of hydrographic inspector; it does not appear that he lived or messed on board, or that while on board he was required to wear his uniform, or that he was subject to the restrictions, regulations, and. requirements incident to sea service.
In the case of McGowan v. The United States (36 C. Cls. R., 63-70), a naval officer was ordered by the Secretary of the Navy to take command of the “ Constellation and the training station at M&ioport, JR. IT
The vessel had its crew and there were attached thereto line, medical, and pay officers, a chaplain and engineer and warrant officers, and from the mast of the ship the pennant and ensign were flown. The vessel was at the same time a training ship for apprentices. The officer in command of the vessel was also the commanding officer of the training station and took his meals at quarters assigned to him on shore. The marines under his command were also quartered in barracks on shore. The officer was required to wear his uniform and otherwise to conform to the usual regulations prescribed for vessels of the Navy in active service.
In that case, like the present, the time spent in actual duty on shipboard was not segregated from that spent in the performance of duties required of him on shore. The claim for sea pay was disallowed by the accounting officers on the ground that his paramount duty was on shore and not on the sea or ship; and in that respect the court said:
“When the duty partakes of the character of sea service and shore duty, the fact of each particular case must be considered, and if from the whole case there is a preponderance in favor of either service, the service having the paramount character must constitute the basis on which to predicate the right of payment.’'
*112 That case is much stronger than the present one, as the facts material to entitle the claimant to sea pay are wanting; and assuming that, as set forth in the findings, the claimant’s duties as hydrographic inspector were “ of far more importance ” than his duties as commanding officer of the vessel, the application of the ruling in the McGowan case {supra) would entitle him to only shore paj\
But the claimant contends that if the order of the Secretary of the Navy of 1849 (set forth in finding iv), together with the departmental construction in relation thereto since that date, had been before the court in the McGowan case “the decision in that case would have been different.” That order is that—
“ Officers of the Navy, while attached to vessels of the Coast Survey in sea- service, will be considered as in sea service and entitled to sea paju The vessels of the Coast Survey will be considered as in sea service only while actualty employed as vessels of the Coast Survey.”
The first thing to note is that the condition of sea pay under that order is that when the officers of the Naiy are “ attached to vessels of the Coast Survey in sea service,” thej^ “will be considered as in sea service,” and that such vessels will be considered as in sea service only while actually emplojmd.
In the Symonds case (22 C. Cls. R., 148, 154) the court said:
“ The legal essence of things can not be changed by a mere name — by the volition of an executive officer in the discharge of executive dutsu Section 1571 was intended by Congress to define what is sea service, and it is not reserved to the Secretary of the Navy to perform that duty bjr regulation. If the section does not perform the function of definition in the clearest light, it is reserved to courts (which must ultimately construe the law) to gather, if possible, the purpose and will 'of the legislature from the best and highest sources of information.”
That is to say, from the law, as embodied in section 1571, as construed by the Supreme Court and this court in the cases to which we have referred, and not from the regulation, the court must determine whether the service is or is not sea service. The Secretary of the Navy has not the power to declare sea service to be shore service; nor has he the powef to declare shore service to be sea service.
*113 The question in this case is one free from doubt, and so we have no need to resort to departmental construction. While in finding it we have given the claimant the benefit of the custom and practice of the accounting officers in allowing officers of the Navy sea pay when attached to and doing duty on Coast Survey vessels, it is enough to say that the claimant fails to bring himself within the custom and practice in this, that he does not show that he was doing duty on board the vessel to which he was attached. This was held to be essential in the McGowan case (supra).
Nor does it appear that he wore or was required to wear his uniform, or that he was subject to the restrictions, requirements, or regulations of the Navy Department. Nor does it appear that the claimant lived aboard the vessel, or that his paramount duty was on shipboard. On the contrary, the findings show that his duties as hydrographic inspector were “ of far more importance” than his duties as commander of the vessel.
The conclusion we have reached obviates the necessity for' considering the claim for commutation for sea ration.
For the reasons given we must hold that the claimant is not entitled to recover, and his petition is therefore dismissed.