Peelle, J.,
delivered the opinion of the court:
The claimant, an officer in the United States Navy, while on shore duty at the Puget Sound Naval Station, was ordered by the Secretary of the Navy to report to the commandant of that station “ for the command of the U. S. S. Nipsic,” a receiving ship, stating in the order that “ This service is in addition to your present duty.” The claimant, in obedience to the order, reported to the commandant and from the date of the order, January 9, to October 3, 1901, performed the duties under both assignments.
During the period stated the claimant lived on shore in quarters provided for him by the Government. No servants, such as are usually allowed to the commanding officers of vessels, were allowed to the ship. The claimant when on dutjr wore his uniform, and from the date of the order of the Secretary of the Navy (July 25, 1901), stating that the ship would be considered as a receiving ship from the date of the order assigning him to the command of the Nipsic, the ensign, jack, and pennant were flown according to the .regulations of the Navy Department.
*44 Two questions are presented: First, Was the claimant’s service as commander of the vessel sea service within the meaning of Revised Statutes, section 1571, providing that “No service shall be regarded as sea service except such as shall be performed at sea under the orders of a Department and in vessels employed by authority of law ?”
Second, Whether if such service was sea duty the claimant is entitled to sea pay, notwithstanding during such period he performed in addition thereto the shore service to which he had previously been assigned ?
That an officer of the Navy may perform sea duty entitling him to sea pay on a receiving ship or recruiting vessel, under certain conditions, has been frequently decided both by the Supreme Court and this court; but do these conditions exist in the present case?
In the case of Symonds v. United States (120 U. S., 46, 51) the court, affirming the judgment of this court (21 C. Cls. R., 148), held that sea pajr might “ be earned by services performed under the orders of the Navy Department in a vessel employed, with authority of law, in active service in bays, inlets, roadsteads, and other arms of the sea, under the general restrictions, regulations, and requirements that are incident or peculiar to service on the high seas.” The vessel in that case was anchored in Narragansett Bay during the whole period for which sea pay was claimed, and was not in condition to be taken out to sea beyond the mainland. The vessel was a training ship subject to the regulations which would have been enforced had the vessel been used for cruising or as a practice ship. The claimant was required to live and mess on board. For the reason stated, the court held that he was, while in the performance of such service, on sea duty and entitled to sea pay.
That case was followed in the like case of United States v. Bishop (120 U. S., 51). The vessel in that case was also a training ship “ stationed in the harbor of New York, cruising and moving about under her own power, her machinery and equipment were kept in order, and she was perfectly seaworthy, capable, upon short notice, of being used in. a protracted cruise,” and the duties of her “ executive *45 officer were more arduous and confining than those of officers in similar grades upon vessels in foreign waters.”
In the case of United States v. Strong (125 U. S., 656) sea pay was allowed for service performed as executive officer on a recruiting ship anchored in a port at a navy-yard, not in commission for sea service, on the ground that the duties of such officer were not only similar to those of executive officers on cruising ships, but in addition thereto such officer performed other duties “ more exacting and arduous than those on cruising ships; ” and was required to have his quarters on board and to mess there, to wear his uniform, and “ was not permitted by the rules of the service to live with his family.”
In the case of United States v. Barnette (165 U. S., 174) the officer was assigned as executive officer of a Government, vessel furnished by the Navy Department, under an act of Congress, to the State of New York, as a school-ship. The vessel cruised for about five months in the year and the remainder of the time was attached to a dock in the harbor of New York. “ While she was not cruising, the claimant lived on board, and Avas on duty on board every day, wearing his uniform and doing the same duty, and subject to the same regulations as while the ship was on the high seas; and in the matter of quarters, mess, and uniform there was no difference, whether the vessel was under sail, or lying at anchor, or tied to a wharf.” For these reasons the court, affirming th'e judgment of this court (30 C. Cls. R., 197), allowed sea pay.
In the case of Wykoff v. United States (34 C. Cls. R., 288) an officer while in command of the naval station at Puget Sound was ordered by the Secretary of the Navy to the command of the Nipsic, the vessel here in controversy, and retained command of her until ordered before a retiring-board. The force on the vessel was in the employment of the Bureau of Yards and Docks, and all regulations applicable to a vessel at sea were observed. The officer wore his uniform when on duty and had his quarters continuously on hpard and messed there.
To the same effect also is the case of Taussig (38 C. Cls. R., 104).
*46 In all these cases it will be noted that the officers not only were their uniforms when on duty, but lived and messed on board their respective vessels while so employed and were subject to all the restrictions, regulations, and requirements of the Department applicable to vessels in the open sea.
In the present case the claimant neither lived nor messed on board, nor were servants allowed to the vessel. On the contrary, he lived and messed on shore in quarters furnished to him by the Government, and he presumably received the other allowances to which he was entitled; and to hold that under such circumstances the claimant’s service was performed in a vessel subject to the restrictions, regulations, and requirements incident or peculiar to service on the high seas would, in effect, nullify the first proviso to said section 13.
The liberal construction which has been given to section 1511 can not be applied to the present case without practically nullifying the section. It was certainly not the purpose of the Congress by section 13 of the act of 1899 to repeal that section, though that doubtless would have been the result but for the first proviso thereto. The Congress in fixing the compensation for naval officers had long recognized the dangers incident to sea service, and for that reason made a difference in the pay of officers for service at sea and on shore. And that distinction is preserved in section 13 of the act of 1899..
Let us again examine that section, which reads:
“ That, after June thirtieth, eighteen hundred and ninety-nine, commissioned officers of the line of the Navy and of the Medical and Pay Corps shall receive the same pay and allowances, except forage, as are or may be provided by or in pursuance of law for the officers of corresponding rank in the Army: Provided, That such officers when on shore shall receive the allowances, but fifteen per centum less pay than when on sea duty * * * .”
It will thus be noted that the officers named in that section, of which the claimant is one, are by the enacting clause given but one rate of pay — i. e., “ the same pay and allowances, except forage,” as that given to officers of corresponding rank in the Army, and but for the proviso *47 thereto — “ that such officers when on shore shall receive the allowances, but fifteen per centum less pay than when on sea duty ” — they would have been entitled to sea pay whether on sea or shore duty. The proviso, therefore, carves out of the enacting clause the exceptional pay based wholly on shore service. It follows, therefore, that while the normal pay of officers in the Navy is sea pay, as we held in effect in the Ryan case (38 C. Cls. R., 143, 147), the exceptional pay is for shore service, thus showing, we think, beyond question, that the purpose of the Congress by the act of 1899 was not to repeal section 1571. That being so, we must adhere to the meaning of that section as construed by the Supreme Court and this court in the decisions cited.
The petition is dismissed.