## UNITED STATES *v.* ENGARD.

### APPEAL FROM THE COURT OF CLAIMS.

No. 136.   Argued January 18, 1905.—Decided February 20, 1905.

The Navy Department has no power to disregard the provisions of Rev. Stat. §§ 1556, 1571, and Pars. 1154, 1168, naval regulations and either deprive an officer of sea pay by assigning him to a duty mistakenly qualified as shore duty but which is in law sea duty, or to entitle him to receive sea pay by assigning him to duty which is essentially shore duty and mistakenly qualifying it as sea duty.

Where, however, the assignment of an officer to duty by the Navy Department expressly imposes upon him the continued discharge of his sea duties and qualifies the shore duty as merely temporary and ancillary to the regular sea duty, the presumption is that the shore duty is tempo-

rary and does not operate to interfere with or discharge the officer from the responsibilities of the sea duties to which he is regularly assigned and he is entitled to sea pay during the time of such temporary shore duty.

SOMEWHAT condensing the facts below found, they are as follows: In February, 1897, Chief Engineer Albert C. Engard was performing duty as the chief engineer of the United States receiving ship Richmond, at League Island, Pennsylvania. On the eleventh of February he received the following order from the Navy Department:

"NAVY DEPARTMENT,
"Washington, February 11, 1897.

"SIR: Report by letter, to the president of the Steel Inspection Board, navy yard, Washington, D. C., for temporary duty in connection with the inspection of steel tubes for the boilers of torpedo boat No. 11, at Findlay, Ohio, and at Shelby, Ohio.

"You are authorized to perform such travel between League Island, Pa., and Findlay, Ohio, and between League Island, Pa., and Shelby, Ohio, as may be necessary in the performance of this duty.

"Keep a memorandum of the travel so performed by you, certifying to its necessity, and submit the same to the Department, from time to time, for its approval.

"This duty is in addition to your present duties.

"Very respectfully,
"W. McADOO, Acting Secretary.

"Chief Engineer Albert C. Engard, U. S. Navy,
"U. S. R. S. Richmond, Navy Yard, League Island, Pa."

Complying with this order, Chief Engineer Engard made two round trips between League Island and Ohio, in order to discharge the additional duty referred to in the order. The total number of days in which he was engaged in this work between February 24, 1897, and August 14, 1897, was 122. On an application to be allowed mileage for the trips, amounting to $172.80, the Auditor of the Navy Department deducted from the claim $133.70, and allowed only $39.10. The sum

disallowed was deducted on the theory that the chief engineer was only entitled to be paid for shore duty instead of for sea service during the time referred to. This suit was brought to recover the amount of the deduction, and the right to so recover was sustained by the Court of Claims. 38. C. Cl. 712.

*Mr. Special Attorney John Q. Thompson*, with whom *Mr. Assistant Attorney General Pradt* was on the brief, for the United States:

The cases construing §§ 1556 and 1571, Rev. Stat., have established as general principles: First, that the pay of a naval officer is not determined by the nature of the order assigning him to duty, but, on the other hand, is determined by the nature of the duties actually performed by the officer. Second, that where the services performed are partly sea duty and partly shore duty, the *paramount* duty should determine the pay where it is possible to segregate the time spent in sea service from the time spent on shore duty. As a corollary, it may be said that an order from the Secretary of the Navy may have the effect of relieving an officer from either shore duty or sea duty, notwithstanding the fact that the order does not do so *eo nomine*.

Pay is not determined by the order. *Symonds* v. *United States*, 21 C. Cl. 148; *S. C.*, 120 U. S. 46; *Pierce* v. *United States*, 33 C. Cl. 294; *Wyckoff* v. *United States*, 34 C. Cl. 288; *Mc-Gowan's Case*, 36 C. Cl. 69; *Hannum* v. *United States*, 36 C. Cl. 99; *Taussig* v. *United States*, 38 C. Cl. 112. The paramount duty should determine pay. The services were not performed at sea and the mere fact that the order did not contain express words detaching him from sea service during the time he was temporarily employed on those services does not change the character of shore services to sea service. *Schoonmaker* v. *United States*, 19 C. Cl. 170.

*Mr. William B. King*, with whom *Mr. George A. King* was on the brief, for appellee:

An officer sent temporarily to hospital without detach-

ment from his vessel, is held even by the Treasury Department entitled to sea pay. The Comptroller decided, 2 Comp. Dec. 299, that it would be absurd to hold that every time an officer was compelled by ill health to go into hospital for temporary treatment he is thereby detached from the service to which he had been ordered by the Secretary. It rests with the Secretary to so detach him and place him upon "leave or waiting orders." That decision in its application to temporary absence on account of illness has been followed by the Court of Claims in *Collins* v. *United States*, 37 C. Cl. 222. If an officer temporarily absent from his vessel in hospital is entitled to sea pay during his absence, so much the more is sea pay due to an officer whose responsibilities as an officer of a vessel continue while he has, in addition to these, other duties ashore.

MR. JUSTICE WHITE, after making the foregoing statement delivered the opinion of the court.

A higher rate of pay is allowed to a chief engineer as well as to other naval officers when performing sea duty than when engaged on shore duty. Rev. Stat. § 1556. And Rev. Stat. § 1571 provides as follows:

"No service shall be regarded as sea service except such as shall be performed at sea, under the orders of a Department and in vessels employed by authority of law."

The Government did not dispute at bar, however, that where an officer assigned to sea duty within the purview of the foregoing provision is called upon, without a change in his sea assignment, to perform merely temporary service ashore, he is entitled to sea pay. And this is in accord with the naval regulations, wherein it is provided:

Paragraph 1154:

"(1.) Officers shall be entitled to sea pay while attached to and serving on board of any ship in commission under control of the Navy Department, the Coast Survey, or the Fish Commission. . . .

"(3.) Any officer temporarily absent from a ship in commission to which he is attached shall continue to receive sea pay. . . ."

Paragraph 1168:

"A temporary leave of absence does not detach an officer from duty nor affect his rate of pay."

It is settled that the Navy Department has no power to disregard the statute and to deprive an officer of sea pay by assigning him to a duty mistakenly qualified as shore duty, but which is in law sea duty. *United States* v. *Symonds,* 120 U. S. 46; *United States* v. *Barnette,* 165 U. S. 174. And of course the converse is also true that the Navy Department has no power to entitle an officer to receive sea pay by assigning him to duty which is essentially shore duty and mistakenly qualifying it as sea duty. But there is no conflict between these rulings, and the conceded principle that where an officer is assigned to a duty which is essentially a sea service that he does not lose his right to sea pay whenever he is called upon to perform a mere temporary service ashore. In the present case it cannot be denied that the officer was assigned to sea duty and that the order of the Department, instead of detaching him therefrom, simply ordered him to discharge a temporary service ashore in addition to his sea service. The whole contention of the Government is that this temporary shore service was necessarily incompatible with the continued performance of the officer's duty on the ship to which he continued to be attached, and therefore that the shore duty was paramount to the sea service, and necessarily by operation of law affected the detachment of the officer so as to permanently relieve him from the sea duty to which he continued to be regularly assigned.

There is no finding in the record, however, which justifies this argument, and as urged at bar it rests upon the mere assumption of the incompatibility between the sea duty to which the officer was regularly assigned and the temporary shore duty which he was called upon by the Department to

discharge. In effect, the proposition is that it must be assumed as a matter of law, in the absence of a finding to that effect, that the temporary shore duty was of such a permanent character as to render it impossible for the officer to continue to perform duty under his permanent sea assignment, and, therefore, as a matter of law caused such assignment to terminate. We think the converse is true, and that where the assignment of an officer to duty by the Navy Department expressly imposed upon him the continued discharge of his sea duties and qualified the shore duty as merely temporary and ancillary to the regular sea duty, that the presumption is that the shore duty was temporary and did not operate to interfere with or discharge the officer from the responsibilities of his sea duty to which he was regularly assigned.

*Affirmed.*