BaRNey, J.,
delivered the opinion' of the court:
The claimant entered the naval service of the United States as an enlisted man on August 3,1872, and has served continuously in the Navy since that date. He was rated a mate on April 15, 1898; was appointed a boatswain from March 6, 1889, and was promoted to chief boatswain from March 6, 1905, which rank he still holds.
On October 13, 1902, and while the claimant was attached to the U. S. S. Columbia at the navy yard,' New York, he received from the Acting Secretary of the Navy the following order:
“ SiR: Proceed to Trenton, N. J., and report to Lieut. Commander John G. Quinby, U. S. Navy, in charge of the naval recruiting party, at that place on October 17, 1902, for duty with the recruiting party.
“ This duty is in addition to your present duites.
“ Respectfully,
“ Chas. H. Darling,
■ “Acting Secretary.”
Pursuant to said order the claimant reported for duty with said recruiting party. Under date of August 3,1903, he was ordered to regard himself detached from the U. S. S. Columbia., and to report by letter to the commandant of the navy yard, New York, for duty on board the U. S. S. Hancock. The claimant was still engaged in the performance of recruiting duty when he received this order, and continued upon such duty until, upon request by him, he was, under date of October 20,1903, ordered detached from recruiting duty and to report'for duty upon the U. S. SHancock. In obedience to this order he was detached from recruiting duty at Indianapolis, Indi, on October 23, 1903, and reported for duty as therein ordered on October 26, 1903. The Auditor of the Navy Department refusing to allow him sea pay while on this recruiting duty, the claimant requested the Secretary of the Navy to modify the order assigning him to recruiting duty, and in answer to this request received the following communication:
“June 15, 1907.
“ Sir : Referring to your orders of October 13,1902, it was the department’s intention that they should read ‘ for tern- *185 porary duty with the recruiting party.’ Thé omission of the word ‘temporary’ was clearly a clerical error, as you were not detached from the U. S. S. Columbia.
“ Your orders of October 13, 1902, with data attached, are returned herewith.
“ Respectfully, , ' '
, “(Signed) W. N. BnowNSON,
“ Chief of Bureau.”
Notwithstanding this modification claimant has been refused sea pay during such recruiting service, and this suit is brought to recover the difference between sea and shore pay for that period.
This case presents the question whether the services of the claimant while on shore on duty with a recruiting party for something more than a year, was merely temporary and ancillary to his regular sea duty, or whether it was of a character which detached him from his sea duty and entitled him to shore pay only.
It is perhaps not an anomalous fáct' that in this case both the claimant and the Government rely upon the same ruling both in this and the Supreme Court. (Engard v. United States, 196 U. S., 511; 38 C. Cls., 712.) ■ It was there held that, when an officer is assigned to a duty which is essentially a sea service, he does not lose his right to sea pay whenever he is called upon to perform a mere temporary service ashore. In that case the officer was on duty on a receiving ship at League Island, and by an- order of the Secretary of the Navy was assigned to temporary duty in connection with the inspection of boiler tubes at Findlay and at Shelby, Ohio; and the findings show that he made separate trips from League Island to each of those places for that purpose. . ■ . -
On the first journey he left League Island February 24 and returned to League Island April 27; on the second journey he left June 15 and returned August 14.' Upon these facts it was held that such duties were merely temporary and only incidental to his sea duty at League Island. It might be added also that in that case the order assigning the claimant to this duty in the inspection of boiler tubes designated such duty as being temporary; and while it may *186 be true, as said in effect by the Supreme Court in its opinion in that case, that the Navy Department has no power to fix the character of service by the terms of its order, yet in a doubtful case it may be persuasive for that purpose. As before stated, it appears that in a communication several years after the service involved in this case was rendered, it was stated by the Chief of Bureau that the order assigning the claimant to shore duty should have read for “ temporary duty,” and the omission of the word “ temporary ” was a clerical error; and the decision of this court in the Mueller case (41 C. Cls., 240) is invoked to make this explanation effect a change of the original order. It needs no argument to show that the subsequent approval of a previous order, and thereby giving it effect, as was the fact in the Mueller case, is quite different from entirely changing the phraseology of an order years after it was issued. However, as indicated by the Supreme Court in the Engard case, sufra, this case is to be decided upon the facts as they actually existed and not by any qualifying words in the order given, except as before stated in so far as they may indicate the kind of service in fact performed.
In the Engard case the two trips taken by the claimant and lasting only 60 days each, were clearly temporary service only, and in deciding that case the court said:
“It is manifest that the chief engineer of a great ship of war like the Richmond has many duties and responsibilities besides appearing on deck in uniform — such as making reports, ordering supplies, carrying on correspondence, preparing against accidents to his machinery, and supervising the work and discipline and accounts of his subordinates. The Richmond continued to lie at the League Island Navy Yard while the chief engineer went to Shelby, Ohio, to inspect boiler tubes; but he, and no other officer, continued to be her chief engineer as completely as if he walked her deck and slept in her cabin. His service in inspecting boiler tubes was, fer se, shore duty; but his service on the Richmond at the same time was sea service, and the one was ‘ temporary ’ and the other permanent.” (38 C. Cls., 712, 717.)
The principle involved in this case is well illustrated in the case of Leach v. United States (44 C. Cls., 132), which was a suit by an Army officer to recover 10 per cent increase *187 of pay for shore duty beyond seas. It was there held that the character of such service was a question of fact. Also in the case of McGowan v. United, States (36 C. Cls., 63), which was a suit by a naval officer to recover the difference between sea pay and shore pay. It was there held that the terms of an order assigning to particular service could not classify the service actually performed, and that in suits of this kind the facts in each case must be considered, and the paramount service must constitute the basis on which to place the right of pay.
In the case at bar the claimant was entirely relieved from all of the responsibilities and discomforts of sea service for more than a year. If that is temporary service then two, five, or ten years’ service in a recruiting party might be called temporary service if, technically, the order did not separate the claimant from sea duty.
We think that the facts and circumstances in this case clearly show that the services of the claimant while away from his vessel and connected with the recruiting service was shore duty.
The claim for duty pay for the period between the 22d day of December, 1902, and the 3d day of January, 1903, during which time the claimant was absent on leave of absence, is disallowed under the case of Roberts v. United States (44 C. Cls., 411).
Judgment will be entered dismissing the petition.