Nott, Cli. J.,
delivered the opinion of the court:
The law in this case is thus declared by statute: “ When any officer travels under orders, and is not furnished transportation by the Quartermaster’s Department, or on a conveyance belonging to or chartered by the United States, or on any railroad on which the troops and supplies of the United States are entitled to be transported free of charge, he shall be allowed seven cents a mile, and no more, for each mile actually traveled under such order.” (Acts 27th July, 1876, 19 Stat. L., p. 97, 100, sec. 2; 3d March, 1899, 30 id., 1064, 1068, sec. 1.)
The claimant in this case was not furnished transportation by the Quartermaster’s Department, and he did not travel on “ a conveyance belonging to or chartered by the United States, or on any railroad on which the troops and supplies of the United States are entitled to be transported free of charge.” Therefore, if he traveled “ under orders,” he was entitled to mileage.
On the 30th of October, 1899, the Navy Department teh egraphed to the commandant of the Boston Navy-Yard concerning certain officers, of whom the claimant was one, “ Upon reporting to you, instruct them to proceed immediately to Mare Island; ” and on the 31st of October Admiral Sampson, commandant of the Boston Navy-Yard, gave this order to the claimant: “ Proceed immediately to Mare Island, Cal., and report to commandant of that station.” The claimant was, therefore, traveling “ under orders,” which were given by competent authority, and his case comen directly within the terms of the statute.
The grounds of the defense are these:
On the 27th October, 1899, the claimant, an ensign in the Navy, was attached to and doing duty on board the U S. S. Texas, then lying at Norfolk, Ya. On that day the Navy Department issued an order saying: “You are hereby detached from duty on board the U. S. S. Texas; will proceed, without delay, to Boston, Mass., and report to the commandant of the navy-yard at that place for duty in connection with a draft of men to be transferred from the U. S. S. Olympia, navy-yard, Boston, Mass., to Mare Island, Cal.”
*239 This order was received by the claimant on board the U. S. S. Texas at 3 p. m. October 28, 1899. The claimant started on his journey on October 29 at 5 p. m. When he so started, the draft of men to be transferred from Boston to Mare Island had left Boston.
The Navy Regulations (paragraph 226) provide: “An order from the Secretary of the Navy to an officer requiring him to proceed to any point, but fixing no date and not expressing haste, shall be obeyed by leaving within four days after its receipt. If the order reads ‘ without delay ’ he shall leave within forty-eight hours; if ‘ immediately,’ within twelve hours; and all officers shall indorse on their orders the date and hour of their receipt.” The claimant, therefore, was guilty of no delay in leaving Norfolk. lie did precisely what he was ordered to do. The fact that he did not start until after the draft of men had gone from Boston must be ascribed either to a blunder of some official in the Navy Department or to some mistake on the part of the commanding officer at Boston.
It has been suggested that the claimant was constructively traveling from Boston to Mare Island, under the first order which he received, with a draft of men, and on a railroad train belonging to or chartered by the United States. “ Constructive travel ” is travel Avliere an officer, by some fiction of law or fact, is paid for travel where there was none. In this case the travel was actual. To hold that it was constructive would be to hold that the officer was traveling on an imaginary conveyance belonging to or chartered by the United States, and with a phantom draft of men. It is not understood in this case that the Secretary of the Navy intended, by these orders, to deprive the claimant of his lawful reimbursement in the form of mileage; but if he had so intended, he could no more have changed the actual into the constructive than he could have changed an officer’s sea service into shore duty by the terms of an order. (Symond's case, 21 C. Cls. R., 148; 120 U. S. R., 46.)
The judgment of the court is that the claimant recover $101.16.